## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE LOUIS A. TELERICO<br>*Debtor* | CASE NO. 17-50236<br>CHAPTER 11<br>JUDGE ALAN M. KOSCHIK |

## PLAN OF REORGANIZATION VERSION 1.2 FOR LOUIS A. TELERICO

## ARTICLE I.   SUMMARY

This Plan of Reorganization Version 1.2 (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") is proposed by Louis A. Telerico as Debtor and Debtor-in-Possession ("Debtor").  The Debtor proposes to pay parties holding Allowed Claims ("Creditors") from multiple sources, including without limitation, future income and cash flow from employment and retirement income, a contribution from his wife, and sales or leases of assets.  This Plan provides for two (2) classes of Secured Claims and two (2) classes of Unsecured Claims. General Unsecured Creditors holding Allowed Unsecured Claims in Class 4 are projected to receive distributions which the Debtor estimates to be **ten to twelve percent (10% to 12%) of their Allowed Claims**.

All Creditors should refer to ARTICLE II.  through ARTICLE VI.   below of this Plan for information regarding the precise treatment of their Claims and how the Plan will operate.  A Disclosure Statement that provides more detailed information regarding this Plan and the rights of Creditors has been circulated with this Plan.  Certain capitalized terms used herein are defined in this Plan, the Disclosure Statement or 11 U.S.C. §101 et seq (the "Bankruptcy Code" or "Code").  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II.   UNCLASSIFIED CLAIMS: TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND TAX CLAIMS

2.1    **Unclassified Claims.**  Under section §1123(a)(1), Claims Allowed by the Bankruptcy Court pursuant to §503(b) of the Code ("Administrative Expense Claims"), and Allowed Claims entitled to priority pursuant to §507(a)(8) ("Priority Tax Claims") are not in classes under this Plan and ineligible to vote on the Plan.

2.2    **Administrative Expense Claims.**  Each holder of an Administrative Expense Claim, including fees for professionals retained in the Cases by the Debtor as ultimately Allowed by the Bankruptcy Court ("Professional Fee Claims"), will be paid in full on the Effective Date") or on the first business day after the fifteenth day after the date the order an order approving such fees or expenses is entered on the docket in the Bankruptcy Case, whichever is later, in cash.  The Debtor estimates the amount of Administrative Expense Claims to be $30,000.00.

2.3    **Priority Tax Claims.**  Each holder of a Priority Tax Claim will be amortized and paid in full on or before the expiration of year five of the Petition Date and bear interest

1

at the rate specified in applicable non-bankruptcy tax law until paid in full, and will be paid in accordance with Section 1129(a)(9)(C). The Debtor believes there are no Priority Tax Claims against the estate. In the ordinary course of his financial affairs the Debtor will pay income, use and real estate taxes as they come due, but these are not Priority Tax Claims. Payments on any Allowed Priority Tax Claim may be made from the Debtor's disposable income, tax refunds (if any) or other borrowings if necessary. Which option the Debtor will use to pay Priority Tax Claims will depend in part on the Allowed amount of such Priority Tax Claim which is presently unknown.

2.4 **United States Trustee Fees.** All fees required to be paid by 28 U.S.C. §1930(a)(6) ("U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees due and owing on or before the Effective Date of this Plan will be paid on the Effective Date.

## ARTICLE III.  TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

3.1 Classified Claims shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Secured Claims of Portage County Treasurer ("Portage Treasurer") | Impaired; Entitled to Vote on the Plan. | The Debtor has a Trust (defined below) that owns 3 parcels of real estate: 545 Bristol Dr., Aurora Ohio used by the Debtor as his residence ("Home"), and three adjacent parcels of land one at 132 Bristol Drive, Aurora Ohio ('Bristol Parcel') and two at 130R Glengarry Aurora Ohio (the "Glengarry Parcels" and with the Bristol Parcel the "Parcels" and both collectively with the Home, the "Real Estate"). The Portage County Treasurer has a real estate tax lien against the Home in the amount of $424,793.37 that is a first priority lien against the Home. This amount will be paid bearing no interest in 10 semiannual installments of $42,479.34 paid when the current real estate tax installment is on the Home. In addition the Debtor will also pay the current real estate taxes on the Home when due. Portage County Treasurer has a real estate tax lien against the Glengarry Parcels in the amount of $10,911.33 and $13,065.02 that is a first priority lien against them, and a real estate tax lien against the Bristol Parcel in the amount of $4,051.89 that is a first priority lien against it. These latter amounts will be paid in full upon sale of the Parcels |

| Class | Impairment | Treatment |
|---|---|---|
| Class 2 – Secured Claim of Bank of America ("BOA") | Impaired; Entitled to Vote on the Plan. | On or about July 25, 2001 the Debtor executed a promissory note payable to BOA in the principal amount of $3,000,000.00 ("BOA Note"). To secure repayment of the Note on or about the same date the Trust as mortgagor gave to BOA a mortgage interest in the House that is a second priority lien against it ("BOA Mortgage"). BOA filed proof of claim no. 11 asserting that $3,732,925.43 was owed on the BOA Note. The BOA Note will be converted to a new note having a 25 year term and bearing interest at the rate of 4% per annum. The Debtor will pay interest only in monthly installments for the first 60 months after the Effective Date on the new note, and amortizing amounts of principal and interest commencing in the 61st month after the Effective Date. |
| Class 3–Secured Claim of Stifel, Nicolas & Company, Inc. ("Stifel") | Impaired; Entitled to Vote on the Plan. | On or about December 4, 2009 the Debtor executed a promissory note payable to Stifel in the principal amount of up to $400,000.00 ("Stifel Note"). To secure repayment of the Note on or about the same date the Debtor's Trust as mortgagor gave to Stifel a deed of trust granting it a mortgage interest in the Real Estate that is a second priority lien against the Parcels although a third priority mortgage against the House ("Stifel Mortgage"). Stifel filed proof of claim no. 20 in the Debtor's bankruptcy case asserting that $430,414.61 was owed on the Stifel Note. The Stifel Note and Mortgage are undersecured against the Home and pursuant to 11 U.S.C. § 506 there is no value securing the Stifel Mortgage against the Home. The Debtor has alleged that the Stifel Note and Mortgage were in fact transactions to disguise an advance of commissions to the Debtor that he would earn as a broker for Stifel. In 2013 the Debtor commenced an arbitration proceeding against Stifel and others with the Financial Industry regulatory Authority (FINRA) alleging fraud and breach of contract among other things, and asserting that his claims exceeded the amount due on the Stifel Note. The Stifel Note and Mortgage are therefore not valid claims against |

- 3 -

| Class | Impairment | Treatment |
|-------|-----------|-----------|
|  |  | the estate or the Real Estate.  However to the extent there is a valid claim against the Estate it will be paid from the proceeds of the Parcels and as a general unsecured claim with Class 4. |
| Class 4 – Unsecured Claims. | Impaired; Entitled to Vote on the Plan | Class 4 Creditors consist of the remaining balance due for Claims that were originally secured by the Debtor's Home other than Classes 1, 2 or 3, and all other unsecured Claims..  The Debtor believes that there are 19 Creditors in Class 4: The gross amount of the Claims in Class 4 is $5,290,180.88, but the Debtor believes some of those amounts to be overstated or payable from other sources.  Class 4 Claims will receive a pro-rata distribution with Class 3 if the lien of Class 3 is avoided in whole or in part. |

**3.2** **Periodic Distributions Defined.**

(a)     "Periodic Distributions" means the Distributions to classified Creditors called for under the Plan, made after the Distributions due on the Effective Date to parties in interest.  An Initial Periodic Distribution will commence on or after the 365th day after the Effective Date by presuming all Claims are Allowed at their face value and making a pro-rated Distribution based on that amount.  Periodic Distributions will continue until the Creditor Trust (defined in Section 6.3 below) has no more funds to distribute.

**3.3** **Votes Necessary for a Class to Accept the Plan.**

(a)     A Class of Claims accepts the Plan if both of the following occur: (i) the holders of more than one-half (1/2) of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan, and (ii) the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan.

**(b)**     **If no holder of a Claim in a Class of Claims o eligible to vote in a particular Class timely submits a ballot to accept or reject the Plan and does not otherwise object to the Plan, then the applicable Class will be deemed to have voted to accept the Plan.**

**ARTICLE IV.   ALLOWANCE AND DISALLOWANCE OF CLAIMS**

4.1     **Disputed Claim**.  A "Disputed Claim" is a Classified or Unclassified Claim that has not been allowed or disallowed (by a final non-appealable order), or as to which either: (i) a proof of claim or an application has been filed or deemed filed, and to which a party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated.  Debtor, Creditor Trustee (defined below) or other party in interest shall submit objections to all Claims within ninety (90) days of the Effective Date.  Notwithstanding the foregoing, all

- 4 -

applications for payment of administrative expenses will be deemed to be Disputed Claims until such time as the application is approved by the Bankruptcy Court regardless of whether or not an objection to such application has been filed by a party in interest.

4.2     **Delay of Distribution on a Disputed Claim**.  No pro-rata payment on any Classified or Unclassified Claim due pursuant to ARTICLE II.  or ARTICLE III.   above of this Plan ("Distribution") will be made on account of a Disputed Claim until the Bankruptcy Court enters an order upholding the validity of such Claim, and such order is a final non-appealable order (in such case, the Claim becomes "Allowed" and is an "Allowed Claim").  To the extent a Distribution on a Disputed Claim is delayed, the Debtor or the Creditor Trustee shall segregate an amount equal to such holder's pro rata share of any such Distribution and hold such amount pending final allowance or disallowance of such Claim.  If a Disputed Claim becomes an Allowed Claim, and if the Debtor or the Creditor Trustee is holding funds for Distribution to such holder, Debtor or the Creditor Trustee shall make such Distribution within twenty (20) days of a determination that the Disputed Claim has been Allowed.  If such Disputed Claim is disallowed, then the Debtor or the Creditor Trustee shall include such held funds until the next scheduled Distribution and include such funds in the amounts to be distributed to other Claim holders at such time.

4.3     **Settlement of Disputed Claims**.  The Debtor or the Creditor Trustee will have the power and authority to settle and compromise a Disputed Claim without court approval or compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE V.   PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     Upon the Effective Date the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed or before the Effective Date.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the Effective Date.

## ARTICLE VI.   MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1     Plan Term** The Plan shall be funded as described below for 60 months after the Effective Date ("Plan Term").  Payment on the BOA Mortgage and Note after the Plan Term shall be made outside the Plan.

**6.2     Plan Funding.**

(a)     **Sale of the Home**  Debtor is the Trustee of the Louis A. Telerico 2010 Amended and Restated Revocable Trust Indenture dated February 1, 2010 ("Trust").  The Trust is the record owner of the Home.  On the Effective Date the Debtor will cause the Trust to transfer title to the Home to the Debtor and his wife Sharon Telerico free and clear of all liens claims and encumbrances EXCEPT for and subject to the real estate taxes owed the Portage County Treasurer and the BOA Mortgage.  In addition to the assumption of the amounts due those two creditors by the Debtor, Sharon Telerico will make the contribution to plan funding set forth below.

- 5 -

(b) **Funds on Hand.** Funds on hand will be used to make payments due under the Plan.

(c) **Base Future Income of the Debtor** The Debtor projects that his future income from all sources, social security, pension income, tax refunds and earned commissions and bonuses to be $300,000 annually. Up to 110% of this amount shall be the Debtor's "Base Future Income" and used to make payments to Class 1 and 2, the Debtor's living expenses and maintenance of the Home. Any amount in excess of those amounts shall be paid to the Creditor Trust (defined below) as the "Net Income."

(d) **Excess Future Income of the Debtor** If the Debtor earns income in excess of 110% of his Base Future Income (i.e. $330,000 gross) during the Plan Term, that amount shall be shared with the Creditor Trust with 2/3rds going to the Creditor Trust and 1/3rd being kept by the Debtor. The Creditor Trust's share shall be the "Debtor's Excess Income."

(e) **Spousal Contribution of Sharon Telerico** Sharon Telerico shall contribute $150,000 annually as funds are available during the Plan Term to pay the couple's living expenses, Class 1 and 2 Claims, with any excess over and above the amounts paid to expenses and those two classes becoming part of and paid to the Creditor Trust as the "Net Income."

6.3 **Creation of the Creditor Trust.** On the Effective Date the Debtor will create a trust for the benefit of Claims in Classes 3 and 4 and the Trust Assets will be placed into that trust ("Creditor Trust"). The Creditor Trust will be managed by the Creditor Trustee.

6.4 **Trust Assets Defined.** The assets to be transferred to the Creditor Trust (the "Trust Assets") shall include all assets of the Debtor as of the Petition Date, other than the Home and all Exempt Assets (defined in the Disclosure Statement), and specifically including all Debtor Claims (defined in the Disclosure Statement), Avoidance Actions, the Debtor's Excess Income and the Net Income.

6.5 **Administration of Creditor Trust by Creditor Trustee.** On the Effective Date the Harold A. Corzin shall become the trustee of the Creditor Trust (the "Creditor Trustee") Mr. Corzin has been selected to be the Creditor Trustee as he is a Chapter 7 panel trustee sand familiar with the administration of bankruptcy estates. The Creditor Trustee shall have the following powers and/or duties:

(a) To administer the Creditor Trust and to have dominion and control over all Trust Assets for the benefit of all Creditors who are beneficiaries of the Creditor Trust;

(b) To sell, lease, assign or transfer any Trust Assets including the Parcels free and clear of any claims with suck liens or claims to the Trust Assets being transferred to the proceeds of sale pending later order of the Court;

(c) To determine whether to invest Trust Assets to maximize the return to the Creditor Trust;

(d) To determine whether it is in the best interest of Creditors to continue to attempt to maximize value for the remaining Trust Assets or whether such Trust Assets

- 6 -

should be abandoned and whether any future Distributions will be made under the Plan;

(e)    To determine the value of the Trust Assets, and the prices to be sought for the Trust Assets and to determine the amount of time and plan for the marketing of the Trust Assets and to adjust those values as may be necessary;

(f)    To execute, deliver, file, or record such contracts, instruments, releases, any other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan;

(g)    To receive such reports from the Debtor regarding his Net Income, Excess Income and the as the Creditor Trustee may reasonably determine are necessary for his administration of the Trust Assets;

(h)    To receive on behalf of the Creditor Trust the amount of the Debtor's Net Income and Excess Income from the Debtor or his Spouse;

(i)    To determine whether Sufficient Funds exist to make a Distribution under the Plan;

(j)    To make all distributions to Allowed Claims in Classes 3 and 4 required under this Plan;

(k)    To file post confirmation reports with the Court;

(l)    To pay all taxes and fees owed by the Creditor Trust;

(m)    To object to any Claim and prosecute Claims objections pursuant to the provisions of this Plan and to be substituted as the real party in interest in any objection to a claim or any litigation commenced before the Effective Date by the Debtor;

(n)    To retain employees, agents and professional advisors he deems appropriate to administer the Creditor Trust or the Trust Assets.

(o)    To request the Bankruptcy Court to modify the Plan after the Effective Date;

6.6    **Compensation and Indemnification.** The Creditor Trustee shall be entitled to be compensated from the Trust Assets for his time at the rate specified in 11 U.S.C. §326 on the amounts disbursed to Creditors from the Creditor Trust. The Creditor Trustee shall also be reimbursed for all reasonable out-of-pocket expenses incurred in the performance of his duties hereunder. The Creditor Trustee shall be indemnified by and receive reimbursement from the Trust Assets against and from any and all loss, liability, expense, or damage which he may incur or sustain, in good faith and without gross negligence, recklessness or willful misconduct, in the exercise and performance of his powers and duties under this Plan. The Creditor Trustee may use the Trust Assets to purchase appropriate errors and omissions insurance.

6.7    **Term.** The Creditor Trustee shall continue until all Claims Class 3 and 4 are paid in full, or the Trust Assets are exhausted and all proceeds are paid out to the appropriate parties or the Plan Term ends. Once such event occurs the Creditor Trust shall be deemed dissolved and the Creditor Trustee shall be deemed to have resigned. Title to any Trust Assets that are unadministered upon expiration of the Creditor Trust shall

automatically vest in the Debtor.

6.8     **Retention and Payment of Professionals without Court Order**.  After the Effective Date, the Creditor Trustee, attorneys, accountants and other persons employed or retained by the Creditor Trustee shall be paid in the ordinary course of business by the Creditor Trustee from the Trust Assets, without the need for Court approval.

6.9     **Confidentiality.**  Consistent with their duty to the Estate the Creditor Trustee will preserve the confidentiality of financial information received from the Debtor.

6.10    **Process for Distributions Under the Plan.** An Initial Periodic Distribution will commence on or after the 365th day after the Effective Date by presuming all Claims are Allowed at their face value and making a pro-rated Distribution based on that amount. Annually thereafter Periodic Distributions will be made by the Creditor Trustee during the Plan Term.  A final Distribution will be made once all Claims are Allowed or Disallowed by the Bankruptcy Court.

## ARTICLE VII.   GENERAL PROVISIONS

7.1     **Definitions and Rules of Construction.**  The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.  In addition, all other defined terms used herein have been defined contextually within the text of this Plan.  Terms defined in this Plan, the Disclosure Statement or in Section 101 or 102 are capitalized herein

7.2     **Confirmation Order and Effective Date of Plan.**  The "Effective Date" of this Plan is the fifteenth business day following the date of the entry of the order confirming this Plan ("Confirmation Order" and the date of entry of the Confirmation Order is the "Confirmation Date").  But if a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.  In the event Bankruptcy Court approval of a payment to a party due to be paid on the Effective Date is necessary and such approval has not happened before the Effective Date (such as an award of Professional Fees or ruling on Allowance of a Claim) the term Effective Date with respect to such payment shall mean the date such order becomes a Final Order.

7.3     **Severability.**  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.4     **Binding Effect.**  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.5     **Captions.**  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.6     **Controlling Effect.**  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Ohio govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.7 **Notices.** Any notice required or permitted to be provided under this Plan is required to be in writing and served by one of the following: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; (c) reputable overnight courier service, freight prepaid; or (d) fax; addressed as follows:

If to the Debtor:    Louis Telerico
PO Box 928
Aurora OH 44202


Copy to:    Frederic P. Schwieg, Esq. (0030418)
Attorney At Law
2705 Gibson Dr.
Rocky River, Ohio 44116-3008
Fax (440) 398-0490
fschwieg@schwieglaw.com

7.8 **Delivery of Notices.** If personally delivered, such communication is deemed delivered upon actual receipt; if faxed in accordance with this Plan, such communication is deemed delivered noon of the first Business Day following transmission; if sent by overnight courier in accordance with this Plan, such communication is deemed delivered noon of the first Business Day following deposit with such courier; and if sent by U.S. mail in accordance with this Plan, such communication is deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service; or, if the addressee fails or refuses to accept delivery, as of the date of such failure or refusal. Any party to this Plan may change its address for the purposes of this Plan by giving notice of such change.

7.9 **Inconsistency.** If any inconsistency between this Plan and the affiliated disclosure statement (the "Disclosure Statement") exists, the provisions of this Plan govern.

7.10 **Modification of the Plan**. Debtor expressly reserves the right to alter, amend, or modify this Plan before its substantial consummation to the full extent permitted pursuant to Section 1127 of the Bankruptcy Code , Rule 3019 of the Federal Rules of Bankruptcy Procedure, any other applicable law or the Plan.

7.11 **Subordination.** The Distributions under this Plan take into account the relative priority of each Claim in connection with any contractual subordination provisions relating to such Claim. Accordingly, distributions under this Plan are not and may not be subject to levy, garnishment, attachment, or other legal process by any holder of a Claim purporting to be entitled to the benefits of such contractual subordination, and all such holders are deemed to have waived any and all contractual subordination rights they otherwise may have had.

7.12 **De Minimis Distributions.** No distributions of less than $10 will be made to any Creditor on account of any Claim. If a Creditor holding an Allowed Claim does not receive a distribution owing to the provisions of this section on the Effective Date or any subsequent date, then the Allowed Claim remains eligible for distributions on the first date set for distributions when such distribution exceeds $10.

7.13 **Final Payment Under the Plan**. At such time as all obligations under the Plan are completed, and Distributions have occurred and any remaining funds exist and all proposed Distributions are less than the DeMinimis Distribution limit, then the Creditor Trustee shall be authorized to make payment of any and all funds remaining for payments to the Creditor Trustee's choosing, so long as such charity is located in and/or benefits the inhabitants of Northeastern Ohio.

7.14 **Jurisdiction.** Notwithstanding the entry of the Confirmation Order, a Final Order or the occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction over the Case after the Effective Date as follows:

(a)     to hear and decide (1) objections to Claims; and to disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status or the amount of any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims;

(b)     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Code incurred prior to the Confirmation of this Plan;

(c)     To hear avoidance actions under §§ 522, 544, 545, 548 and 549;

(d)     To determine turnover actions under §§ 542 and 543;

(e)     To issue revocation of an Confirmation Order under § 1144;

(f)     To order dismissal under § 1112;

(g)     To permit modification of the Plan under § 1127(b);

(h)     to enforce the permanent injunction under § 524(a);

(i)     To grant the Debtor a discharge in accordance with § 1141(d)(5)

(j)     To issue final decrees and enter orders closing the Case; and

(k)     any other matter subject to this Court's jurisdiction pursuant to applicable law.

## ARTICLE VIII.   DISCHARGE AND INJUNCTION

8.1 **Discharge**. Upon issuance of the Confirmation Order and the final payment under the Plan, the Debtor may move the Court to grant him a discharge from any debt that arose before confirmation of the Plan, to the extent specified in §1141(d) of the Code.

## ARTICLE IX.   CONFIRMATION REQUEST

9.1     If one or more impaired classes of Claims and Interests fails to accept the Plan under Section 1126 of the Code, and all of the applicable requirements of Section 1129(a) of the Code, other than Section 1129(a)(8), have been satisfied, the Debtor requests that the Court confirm the Plan pursuant to the provisions of Section 1129(b) of the Code.

/s/ Frederic P. Schwieg                          /s/ Louis A. Telerico

Frederic P. Schwieg, Esq. (0030418)          Louis A. Telerico

- 10 -

Attorney At Law
2705 Gibson Dr.
Rocky River, Ohio 44116-3008
(440) 499-4506
Fax (440) 398-0490
fschwieg@schwieglaw.com
Attorney for Debtor

## INDEX OF DEFINITIONS

Administrative Expense Claims, 1
Base Future Income, 6
BOA, 3
BOA Mortgage, 3
BOA Note, 3
Bristol Parcel, 2
Classified Claims, 2
Code, 1
Confirmation Date, 8
Confirmation Order, 8
Creditor Trust, 6
Creditor Trustee, 7
Creditors, 1
Debtor, 1
Debtor's Excess Income, 6
Disputed Claim, 5
Distribution, 5

Effective Date, 8
Glengarry Parcels, 2
Home, 2
Net Income, 6
Parcels, 2
Periodic Distributions, 4
Plan Term, 6
Priority Tax Claims, 1
Professional Fee Claims, 1
Real Estate, 2
Stifel, 3
Stifel Mortgage, 3
Stifel Note, 3
Trust Assets, 6
U.S. Trustee Fees", 2
Unclassified Claims, 1

17-50236-amk    Doc 107    FILED 06/01/18    ENTERED 06/01/18 13:14:30    Page 12 of 12