UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17-50236 (AMK) |
| | ) | |
| Louis Anthony Telerico, | ) | Chapter 11 |
| | ) | |
| Debtor, | ) | Judge Alan M. Koschik |

**Objection of the United States Trustee to Confirmation of
Debtor's Plan of Reorganization**

Daniel M. McDermott, United States Trustee for Region 9, by and through his undersigned counsel, and objects to the *Plan of Reorganization Version 1.3*. For the reasons set forth more fully below, the United States Trustee submits that plan has not been filed in good faith.

*Jurisdiction*

1. Daniel M. McDermott is the United States Trustee for Region 9. Pursuant to 28 U.S.C. § 586, the United States Trustee is statutorily obligated to monitor the administration of cases commenced pursuant to the Bankruptcy Code, 11 U.S.C. § 101 et seq. Pursuant to 11 U.S.C. § 307, the United States Trustee has standing to be heard.

2. The Court has jurisdiction to hear and decide the issues raised by the United States Trustee under 28 U.S.C. § 1334. These matters constitute core proceedings as defined under 28 U.S.C. §157(b)

*Statement of Facts*

3. On February 5, 2017, Louis Anthony Telerico ("Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The first meeting of creditors pursuant to 11 U.S.C. § 341 was held on March 15, 2017.

4   Debtor owns real property located at 545 Bristol Dr., Aurora, Ohio ("Bristol Dr. Property"). Debtor testified at the first meeting of creditors the Bristol Dr. Property is a 35,000 square foot four story house. On *Schedule A/B: Property*, the Debtor values the home at $10,966,000. (Doc. No. 15, pg. 3). The Bristol Dr. Property is listed for sale with Berkshire Hathaway HomeServices and has been on the market since April or May, 2017. The listing price is $14,250,000.

5.   Debtor also owns two vacant lots which are on either side of the Bristol Dr. Property. The lots are identified on *Schedule A/B: Property* as (1) Lot 130 R Glengarry with a value of $675,000 and (2) Lot 132 Bristol Dr. with a value of $275,000. (Doc. No. 15, pg. 4)

6.   *Schedule D: Creditors Who Have Claims Secured by Property* identifies the following creditors with claims secured by the Bristol Dr. Property: Bank of America NA with a claim of $2,999,999; Internal Revenue Service with a claim of $400,000; Ohio Department of Taxation with a claim of $77,500; Portage County Treasurer with a claim of $335,000; and Stifel Bank and Trust with a claim of $400,000. (Doc. No. 15, pgs. 12 and 13).

7. On *Schedule E/F: Creditors Who Have Unsecured Claims,* Debtor scheduled priority claims totaling $74,066 due the Ohio Department of Taxation and general unsecured claims totaling $1,846,431.46. (Doc. No. 15, pgs. 16 – 27)

8.   *Schedule I: Your Income* lists income for Debtor and his non-filing spouse. At the time of the filing, Debtor was not employed but had monthly income of $2,454 from social security and $11,434 from a pension or retirement account. At the time of the filing, his non-filing spouse was employed as Property Manager for Capital L, a corporation owned by Debtor, and listed monthly income of $1,700.00 for "Property Management Fee from Capital L" and $1,490 from social security. (Doc. No. 15, pgs. 33 and 34). Debtor's total household income at

the time of the filing was $17,078.00.

9. *Schedule J: Your Expenses*, Debtor lists total monthly expenses of $13,888 with monthly net income of $3,190 per month. (Doc. No. 15, pgs. 35 and 36)

10. Since the filing of the case, Debtor received new employment and his monthly income has increased.

11. On March 13, 2018, Debtor filed a Chapter 11 Plan of Reorganization and a disclosure statement. (Doc. No. 85 and 86). The Plan and Disclosure Statement were amended several times and on June 22, 2018, the Court granted approval of Disclosure Statement Version 1.3. ("Disclosure Statement"). (Doc. 114) and scheduled a hearing on confirmation on Debtor's Plan of Reorganization Version 1.3 ("Plan"). (Doc. 115)

12. The Disclosure Statement identifies total amount of unsecured claims as $5,290,018 which includes the unsecured portion of scheduled secured claims. The Plan, as filed, proposed to pay unsecured creditors $50,110.33 over five years, which, based on unsecured claims of $5,290,018, is a dividend of less than 1% of the scheduled unsecured claims. The Plan, as filed, proposes Debtor and his non-filing spouse will continue to live in the Bristol Drive Property making interest only payments of $11,465.70 per month to Bank of America for 60 months and paying real estate taxes of $11,486.54 per month. The Plan proposes payments to a trust for distribution to unsecured creditors during the first year of the plan will be $250.85 per month increasing over the five years to $1,466.18 per month in year five. Debtor's monthly household expenses under the Plan for year one, excluding payments to Bank of America and real estate taxes, total $10,703.09. These expenses represent an increase in almost every category from Schedule J. The monthly household expenses also increase every year under the Plan with expenses totaling $15,475.44 per month in year five of the plan.

13. Exhibit C of the Disclosure Statement is a summary of the monthly operating reports filed by Debtor since the inception of the case. According to Exhibit C, Debtor had cash at the end of each month averaging $13,104.82 or $182,207.42 from the filing of the case through March, 2018. According to the monthly operating reports, it does not appear that any of this money has been escrowed or is available to fund the Plan.

14. The Plan contemplates contributions from Debtor's non-filing spouse of $12,500 per month ($150,000 annually). The Disclosure Statement and Plan are silent as to where the non-filing spouse is employed, how long she has been employed and the amount of her annual salary. At the time of the filing of the case, Schedule I reflected Debtor's non-filing spouse earned $3,190 per month. Without proof of her income and without proof she has committed to contribute her income, or at least $150,000 of her income, to fund Debtor's Plan, it is impossible to determine if the plan is feasible.

15. The Plan as proposed suggests Debtor will be unable to meet the requirements of confirmation under 11 U.S.C. § 1129(a)(3). Given the totality of this case, the meager distribution to unsecured creditors suggests the case was filed in bad faith and Debtor never intended to file a confirmable plan or pay a meaningful distribution to his creditors.

*Legal Authority*

16. Debtor's Plan cannot be confirmed because it does not comply with all of the requirements of 11 U.S.C. § 1129(a)(3) requiring a plan be filed in good faith. "Section 1129 of the Bankruptcy Code requires the Court to confirm a Chapter 11 plan that meets certain requirements. The Court 'shall confirm a plan' pursuant to § 1129(a) of the Bankruptcy Code, but 'only if all' of the applicable requirements set forth in that subsection are met." *In re: Trenton Ridge Investors, LLC*, 461 B.R. 440, 455 (Bnkr. S.D. OH 2011

17. The term "good faith" is not defined in the Bankruptcy Code. *Id*. at 468. Nonetheless, it is generally accepted that the term "good faith" means "that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *Id*. An assessment of a debtor's good faith requires the Court to consider all the facts and circumstances surrounding the debtor's filing for bankruptcy. <u>In re Integrated Telecom Express, Inc.</u>, 384 F.3d 108, 118 (3rd Cir. 2004) (dismissing chapter 11 case). Dismissal of a case is proper if the court finds the debtor acted in bad faith and that creditors were prejudiced by such conduct. <u>In re Moses</u>, 227 B.R. 98, 102 (E.D. Mich. 1996).

18. Once a debtor's good faith is called into question, the burden shifts to the debtor to prove the bankruptcy petition was filed in good faith. <u>In re Tamecki</u>, 229 F.3d 205, 207 (3rd Cir. 2000).

19. While Debtor's Plan does provides for a reorganization, it fails to employ principles of fundamental fairness. Debtor is attempting to keep a house with an appraised value of approximately $4,000,000. The Bristol Dr. Property is for sale with a sales price of $14,250,000, yet in the liquidation analysis, Debtor values the house much lower. If Debtor believes the house is worth $14,250,000, this number should be used in the liquidation analysis. If Debtor really wants to sell the Bristol Dr. Property and pay creditors, the sales price should have been reduced or listed at or near the appraised value. Debtor's Plan provides for annual payments for repairs and maintenance on the house starting at $48,000 in year one and increasing to $51,956.74 in year five. Debtor's plan proposes payments to Bank of America, the first mortgage holder $11,465.70 per month and real estate taxes of $11,486.54 per month. This is while paying unsecured creditors $250.85 per month in year one with a total distribution to unsecured creditors during the life of the plan of less than 1%.

20. Debtor is attempting to maintain the same extravagant lifestyle he maintained prior to filing and during bankruptcy. Debtor wants to keep an extremely expensive home, keep two

parcels of vacant land and continue to pay exorbitant expenditures, all at the expense of his unsecured creditor. This behavior smacks of bad faith.

WHEREFORE, the United States Trustee respectfully requests this Court enter an Order denying confirmation of Debtor's plan and for such other relief as this Court deems appropriate.

Respectfully submitted,

Daniel M. McDermott
United States Trustee, Region 9

By: */s/ Scott R. Belhorn*

Scott R. Belhorn (#0080094)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
201 Superior Avenue E., Ste. 441
Cleveland, Ohio 44114
(216) 522-7800, ext. 260
(216) 522-7193 (facsimile)
Scott.R.Belhorn@usdoj.gov

By: */s/ Maria D. Giannirakis*

Maria D. Giannirakis (0038220)
Trial Attorney
Office of the United States Trustee
H.M. Metzenbaum U.S. Courthouse
201 Superior Avenue East, Suite 441
Cleveland, Ohio 44114-1240
Phone: (216) 522-7800 ext. 222

**Certificate of Service**

I certify that on August 3, 2018, a true and correct copy Objection of the United States Plan of Reorganization was served:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

- Todd A. Atkinson    tatkinson@ulmer.com
- Bryan J. Farkas    bjfarkas@vorys.com, bjfarkas@vorys.com;caujczo@vorys.com
- Scott D. Fink    ecfndoh@weltman.com

- David A. Freeburg    david@freeburglaw.com
- Michael J. Occhionero    mjocolpa@sbcglobal.net
- Richard P. Schroeter    rschroeter@amer-collect.com, crogers@amer-collect.com;HouliECF@aol.com
- Frederic P. Schwieg    fschwieg@schwieglaw.com
- David J. Sternberg    djsternberg@ameritech.net
- United States Trustee    (Registered address)@usdoj.gov
- Steven L. Wasserman    swasserman@westonhurd.com, specek@westonhurd.

And by regular U.S. Mail, postage prepaid to:

- PRA Receivables Management, LLC
  PO Box 41021
  Norfolk, VA 23541

- Susan J. Lax
  755 White Pond Drive, Suite 403
  Akron, OH 44320

- Daniel Miller
  221 Summit Street SE
  North Canton, OH 44720

  Deborah Nashmy
  Blue Rock Select LLC
  7395 Center St
  Mentor, OH 44060

- Louis Anthony Telerico
  545 Bristol Dr
  Aurora, OH 44202

By: _/s/ Scott R. Belhorn_

Scott R. Belhorn (#0080094)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
201 Superior Avenue E., Ste. 441
Cleveland, Ohio 44114
(216) 522-7800, ext. 260
(216) 522-7193 (facsimile)
Scott.R.Belhorn@usdoj.gov