IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE LOUIS A. TELERICO<br>*Debtor* | CASE NO. 17-50236<br>CHAPTER 11<br>JUDGE ALAN M. KOSCHIK |

**AMENDED MOTION OF LOUIS A. TELERICO DEBTOR AND DEBTOR IN POSSESSION TO SELL A PARCEL OF REAL ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

Louis A. Telerico Debtor and Debtor in Possession ("Debtor"), moves the Court pursuant to 11 U.S.C. §363(f) for the sale of the estate's interest in a vacant parcel of real property located on Glengarry Drive.

## BACKGROUND

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). The statutory predicate for the relief sought herein is §363(b) and (f) of the Bankruptcy Code.

2. Debtor is the Trustee of the Louis A. Telerico 2010 Amended and Restated Revocable Trust Indenture dated February 1, 2010 (hereinafter referred to along with the predecessor trusts described below as the "Trust"). The Trust amended and restated the Debtor's 2007 Amended and Restated Revocable Trust dated April 30, 2007, which itself amended and restated the Debtor's Elaine J. Telerico Revocable Trust dated November 4, 1992. Under the 2010 Trust indenture all property of the prior trusts became property of the Trust.

3. Among the assets titled in the Trust is a house and approximately 2 acres of land at 545 Bristol Dr., Aurora Ohio, identified by permanent parcel number 03-016-00-00-173-003 and used by the Debtor as his residence ("Home"), and three adjacent parcels of land one at 132 Bristol Drive, Aurora Ohio identified by permanent parcel number 03-016-00-00-177-000 ("Bristol Parcel") and Lot 130-A, 130-R, and 133 Glengarry Drive, Aurora, Ohio 44202 and

17-50236-amk    Doc 151    FILED 09/13/18    ENTERED 09/13/18 10:16:52    Page 1 of 14

identified by permanent parcel numbers 03-016-00-00-173-001 and 03-016-00-00-173-002 (collectively the "Glengarry Parcels" and with the Bristol Parcel the "Parcels" and both collectively with the Home, the "Real Estate").

4. The Home has an appraised value of $4,000,000.00 and the Parcels have an appraised value collectively of $473,000.

5. Brad Cromes, Treasurer for Portage County Ohio ("Portage County Treasurer") has a real estate tax lien against the home in the amount of $424,793.37 that is a first priority lien against the Home, a real estate tax lien against the Glengarry Parcels in the amount of $10,911.33 and $13,065.02 that is a first priority lien against them, and a real estate tax lien against the Bristol Parcel in the amount of $4,051.89 that is a first priority lien against it.

6. On or about July 25, 2001 the Debtor executed a promissory note payable to Bank of America NA ("BOA") in the principal amount of $3,000,000.00 ("BOA Note"). To secure repayment of the Note on or about the same date the Trust as mortgagor gave to BOA a mortgage interest in the House that is a second priority lien against it.

7. On March 31, 2017 BOA filed proof of claim no. 11 in the Debtor's bankruptcy case asserting that $3,732,925.43 was owed on the BOA Note.

8. On or about December 4, 2009 the Debtor executed a promissory note payable to Stifel in the principal amount of up to $400,000.00 ("Stifel Note"). To secure repayment of the Note on or about the same date the Trust as mortgagor gave to Stifel a deed of trust granting it a mortgage interest in the Real Estate that is a second priority lien against the Parcels although a third priority mortgage against the House ("Stifel Mortgage").

9. On June 14, 2017, Stifel filed two proofs of claim: (i) a secured claim (the "Secured Claim") in the amount of $430,414.61 for amounts outstanding on the Stifel Note; secured and perfected

by a deed of trust on the Real Estate, as more fully described in proof of claim number 20 and related exhibits; and (ii) an unsecured claim (the "Unsecured Claim" and, together with the Secured Claim, the "Stifel Claims") in the amount of $125,156.75 for amounts outstanding on a promissory note and related advanced tax payments as more fully described in proof of claim number 21 and related exhibits.

10. On or about August 23, 2011 BOA filed a foreclosure proceeding against the Debtor in the Portage County Court of Common Pleas styled *Bank of America Nat'l Banking Assoc. v. Louis A. Telerico, et al.*, Case No. 2011-CV-1105 ("Foreclosure Action") seeking to foreclose on the BOA Mortgage against the Home.

11. The Debtor believes that the Stifel Note and Mortgage were in fact transactions to disguise an advance of commissions to the Debtor that he would earn as a broker for Stifel. In 2013 the Debtor commenced an arbitration proceeding against Stifel and others with the Financial Industry regulatory Authority (FINRA) alleging fraud and breach of contract among other things, and asserting that his claims exceeded the amount due on the Stifel Note ("Arbitration"). That Arbitration was stayed by the filing of this bankruptcy case.

12. In 2013 Stifel filed a motion for summary judgment in the Foreclosure Action on the Stifel Note which was granted on March 4, 2015.

13. On February 5, 2017 the Debtor filed this bankruptcy case.

14. On January 25, 2018 the Debtor file an adversary proceeding *Louis A. Telerico, Debtor-in-Possession v. Portage County Treasurer et al.* Adv. No. 18-5008 ("Adversary"). In the Adversary the Debtor seeks to determine the extent, validity and priority of various liens and interests in the Real Estate, and in particular alleged that with regard to the Stifel Note and Mortgage his claims exceeded the amount due on the Stifel Note.

15. On February 26, 2018 Stifel filed a motion to dismiss the Adversary as to it based in part on the judgment it obtained in the Foreclosure Action. The Debtor opposed Stifel's motion on March 15, 2018 and it remains pending with this Court.

16. On June 12, 2018 the Debtor filed his Plan of Reorganization Version 1.3 of the Debtor [Doc.114] ("Plan").

17. On August 2, 2018 Stifel submitted a ballot rejecting the Plan.

**PROPOSED COMPROMISE**

18. In a separate Motion of Louis A. Telerico Debtor and Debtor in Possession for Authority to Compromise Controversies with Stifel, Nicolas & Company, Inc. [Doc. 147] ("Compromise Motion") the Debtor requests that the Court approve as a compromise with Stifel for $125,000 as described in the proposed settlement agreement attached as the Compromise Motion as Exhibit A. The proposed compromise will be paid from the net proceeds of sale of the Parcels, one of which is the subject of this as set forth below and other similar such motions to sell may be filed in the future. The Stifel liens will be released against (i) the Home upon approval of the proposed compromise and Stifel's receipt of 50% of the settlement payment; and (ii) the Parcels upon approval of the proposed compromise and Stifel's receipt of 100% of the settlement payment. In addition the Debtor and the estate will release Stifel from any and all claims, including but not limited to those raised in the Arbitration, and Stifel will be dismissed from the Adversary with prejudice pursuant to an agreed upon judgment in the form attached to the settlement agreement.

19. In return, Stifel will release the estate from any other claim other than the $125,000, the Stifel Mortgage will be avoided in its entirety against the Home (upon receipt of 50% of the settlement payment), and the Stifel Mortgage in excess of $125,000 against the Parcels will be

-4-

avoided and preserved for the benefit of the estate pursuant to 11 U.S.C. §551 upon Stifel's receipt of 100% of the settlement payment.

20. The Plan will be modified to reflect these agreements and Stifel will vote to accept the modified plan.

## PROPOSED SALE

21. The Debtor seeks to sell a vacant lot at Lot 130-A Glengarry Drive, Aurora, Ohio 44202 and identified by permanent parcel number 03-016-00-00-173-001 ("Glengarry 130-A"). The Debtor proposes to sell the estate's interest in Glengarry 130-A for $75,000.00 ("Gross Proceeds") on the terms and conditions set forth in the offer to purchase from David Novotny ("Buyer") attached hereto as Exhibit A. Buyer has no connection to the Debtor, but is the son of the Debtor's wife Sharon Stephula. The Buyer seeks to purchase Glengarry 130-A in good faith.

22. Title to Glengarry 130-A is in the name of the Trust. The Debtor is both the trustee and settlor of the Trust which is revocable at the Debtor's discretion. Glengarry 130-A is therefore property of this bankruptcy estate.

23. The only interest superior to the Stifel Mortgage in Glengarry 130-A are the lien for real estate taxes.

24. The Portage County Auditor's fair market appraisal for Glengarry 130-A is $105,300.00, but that value is over 5 years old and land values have dropped in the area since 2012. The Debtor had the Parcels appraised and the value of the Glengarry Parcels was collectively $268,000, and while the Glengarry Parcels are not separately valued in that appraisal this is the smaller and less desirable of the Glengarry Parcels and the Debtor believes that the proposed sales price is therefore fair and reasonable for Glengarry 130-A.

25. There are numerous holders of an interest in Glengarry 130-A, but all such holders of any interest consent to the sale free of their interest.

-5-

17-50236-amk    Doc 151    FILED 09/13/18    ENTERED 09/13/18 10:16:52    Page 5 of 14

26. Many of the interests in Glengarry 130-A are in bona fide dispute. .

27. As the remaining interests are junior in priority to the Stifel Mortgage, the holder of any interest in Glengarry 130-A may be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.

28. In order to provide adequate protection of any interest in Glengarry 130-A, the real estate taxes through the date of closing will be paid to Portage County Treasurer. There is also due a real estate broker commission of 7% and the usual and customary closing costs and prorations. After payment of these amounts the remaining amount (the "Net Proceeds") will be paid to Stifel. All other interests in Glengarry 130-A will be determined by a later order of this Court, in accordance with the respective rights and priorities of the holders of any interest in Glengarry 130-A, as such right appears and is entitled to be enforced against Glengarry 130-A, the Estate or the Debtor under the Bankruptcy Code or applicable non-bankruptcy law.

29. Therefore Glengarry 130-A may be sold free of any interest of any other entity.

    THEREFORE, the Debtor respectfully requests that this Court enter an order approving the sale of Glengarry 130-A free and clear of liens.

    Respectfully submitted,
/s/ Frederic P. Schwieg, Esq.
Frederic P. Schwieg, Esq. (0030418)
Attorney at Law
2705 Gibson Dr
Rocky River, OH 44116
(440) 499-4506
Fax: (440) 398-0490
fschwieg@schwieglaw.com
Counsel for Louis A. Telerico Debtor and Debtor in Possession

### CERTIFICATE OF SERVICE

A copy of this Motion to Sell was served on the following on the date filed by Notice of Electronic Filing or email. The following is a list of the parties who are on the list to receive e-mail notice/service for this case:

**17-50236 Notice will be electronically mailed to the U.S. Trustee, and:**
Todd A. Atkinson on behalf of Defendant Stifel Nicolaus & Company, Inc.
tatkinson@ulmer.com

Todd A. Atkinson on behalf of Interested Party Stifel Nicolaus & Company, Inc.
tatkinson@ulmer.com

Philip Leonard Bednar on behalf of Creditor United States of America
philip.l.bednar@usdoj.gov, northern.taxcivil@usdoj.gov

Philip Leonard Bednar on behalf of Defendant Internal Revenue Service
philip.l.bednar@usdoj.gov, northern.taxcivil@usdoj.gov

Bryan J. Farkas on behalf of Creditor James Mirgliotta
bjfarkas@vorys.com, bjfarkas@vorys.com;caujczo@vorys.com;mdwalkuski@vorys.com

Bryan J. Farkas on behalf of Defendant James Mirgliotta
bjfarkas@vorys.com, bjfarkas@vorys.com;caujczo@vorys.com;mdwalkuski@vorys.com

Scott D. Fink on behalf of Creditor Park View Federal Savings Bank
ecfndoh@weltman.com

Scott D. Fink on behalf of Defendant Dennis Gehrisch
ecfndoh@weltman.com

Scott D. Fink on behalf of Defendant Robert Ranallo
ecfndoh@weltman.com

Stephen R. Franks on behalf of Creditor Bank of America NA
amps@manleydeas.com

Stephen R. Franks on behalf of Defendant Bank of America
amps@manleydeas.com

Bryan T. Kostura on behalf of Defendant Bank of America
bkostura@mcglinchey.com, hhines@mcglinchey.com;jlucas@mcglinchey.com

Allison Manayan on behalf of Creditor Portage County Treasurer
amanayan@portageco.com

Allison Manayan on behalf of Defendant Portage County Treasurer
amanayan@portageco.com

Michael J. Occhionero on behalf of Creditor First National Bank fka Park View Federal Savings Bank
mjocolpa@sbcglobal.net

Michael J. Occhionero on behalf of Defendant First National Bank
mjocolpa@sbcglobal.net

James W. Sandy on behalf of Defendant Bank of America
jsandy@mcglinchey.com, hhines@mcglinchey.com

Richard P. Schroeter, Jr on behalf of Creditor Ohio Bureau of Workers'Compensation
rschroeter@amer-collect.com, sallman@amer-collect.com;HouliECF@aol.com;jvaughan@amer-collect.com

Richard P. Schroeter, Jr on behalf of Creditor Ohio Department Of Job & Family Services
rschroeter@amer-collect.com, sallman@amer-collect.com;HouliECF@aol.com;jvaughan@amer-collect.com

Richard P. Schroeter, Jr on behalf of Creditor Ohio Department of Taxation

rschroeter@amer-collect.com, sallman@amer-collect.com;HouliECF@aol.com;jvaughan@amer-collect.com

Richard P. Schroeter, Jr on behalf of Defendant Ohio Department of Taxation
rschroeter@amer-collect.com, sallman@amer-collect.com;HouliECF@aol.com;jvaughan@amer-collect.com

Frederic P. Schwieg on behalf of Attorney Frederic P. Schwieg
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Debtor Louis Anthony Telerico
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Defendant Bank of America
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Defendant Internal Revenue Service
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Defendant Ohio Department of Taxation
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Defendant Dennis Gehrisch
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Defendant Robert Ranallo
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Plaintiff Louis Anthony Telerico
fschwieg@schwieglaw.com

David J. Sternberg on behalf of Creditor Brian Zeid
djsternberg@ameritech.net

Joshua Ryan Vaughan on behalf of Creditor Ohio Department of Taxation
jvaughan@amer-collect.com, SAllman@AMER-COLLECT.COM;rschroeter@amer-collect.com;HouliECF@aol.com

Steven L. Wasserman on behalf of Creditor Dollar Bank, FSB
swasserman@westonhurd.com, specek@westonhurd.com

Steven L. Wasserman on behalf of Defendant Dollar Bank
swasserman@westonhurd.com, specek@westonhurd.com

Maria D. Giannirakis ust06 on behalf of U.S. Trustee United States Trustee
maria.d.giannirakis@usdoj.gov

Scott R. Belhorn ust35 on behalf of U.S. Trustee United States Trustee
Scott.R.Belhorn@usdoj.gov

Louis Telerico (via email)

Via Mail
David Novotny
6777 Dana Ave
Hudson OH 44236

                                              /s/ Frederic P. Schwieg
                                              Frederic P. Schwieg




## PURCHASE AGREEMENT
### OFFER, RECEIPT AND ACCEPTANCE

**BUYER** The undersigned (1) David Novotny ____ (2) ____ offers to buy the

**PROPERTY** located at Glengarry Dr. Lot 130-A ____, City Aurora ____

Ohio, ZIP 44202 ____ Permanent Parcel No(s). 03 016 00 00 173 001 ____

and further described as being: Vacant residential land

The property, which BUYER accepts in its "AS IS" PRESENT PHYSICAL CONDITION, shall include the land, all appurtenant rights, privileges and easements, and all buildings and fixtures, including such of the following as are now on the property: all electrical, heating, plumbing and bathroom fixtures; all window and door shades, blinds, awnings, screens, storm windows, curtain and drapery fixtures; all landscaping, disposal, TV antenna, rotor and control unit, smoke detectors, garage door opener(s) and ____ controls; and all permanently attached carpeting. The following items shall also remain: ☐satellite dish; ☐TV mount(s); ☐range and oven; ☐microwave; ☐kitchen refrigerator; ☐dishwasher; ☐washer; ☐dryer; ☐radiator covers; ☐window air conditioner; ☐central air conditioning; ☐gas grill; ☐fireplace tools; ☐screen; ☐glass doors and grate; ☐all existing window treatments; ☐ceiling fan(s); ☐wood burner stove inserts; ☐gas logs; and ☐water softener. Also included: ____

NOT included: ____

**SECONDARY OFFER** This ☐is ☑is not a secondary offer. This secondary offer, if applicable, will become a primary offer upon BUYER's receipt of a signed copy of the release of the primary offer on or before ____ (date). BUYER shall have the right to terminate this secondary offer at any time prior to BUYER's receipt of said copy of the release of the primary offer by delivering written notice to the SELLER or the SELLER's agent. BUYER shall deposit earnest money within four (4) days of becoming the primary offer.

**PRICE** BUYER shall pay the sum of  $75000
Payable as follows:
Earnest money paid to Broker will be deposited in a non-
interest bearing trust account and credited against purchase price.  $1000
☐ Check to be deposited immediately upon acceptance
   of the offer.
☑ Note to be redeemed within four (4) days after acceptance of
   the offer.
Cash to be deposited in escrow  $____

Mortgage loan to be obtained by BUYER  $____

☐ CONVENTIONAL, ☑ FHA, ☐ VA, ☐ OTHER ____

Seller to pay up to $ ____ of Buyers Closing Costs, Points, Pre-paids, and/or Broker Service Fee.
Subject to court approval and free of all taxes and liens.

**FINANCING** BUYER shall make a written application for the above mortgage loan within 7 ____ days after acceptance and shall obtain a commitment from Metro Mortgage or other lending institution chosen by the BUYER for that loan on or about 06/08/2018 ____ . If the closing cannot occur by the scheduled closing date due to any government regulation or lender requirement, the date of closing shall be extended for the period necessary to satisfy these requirements, not to exceed fourteen (14) business days. If, despite BUYER's good faith efforts, that commitment has not been obtained, then this AGREEMENT shall be null and void. Upon signing of a mutual release by SELLER and BUYER, the earnest money deposit shall be returned to the BUYER without any further liability of either party to the other.
NOTE: In the event of a dispute between the SELLER and BUYER regarding the disbursement of the earnest money, the Broker is required by Ohio law to maintain such funds in his trust account until the Broker receives (a) written instructions signed by the parties specifying how the earnest money is to be disbursed or (b) a final court order that specifies to whom the earnest money is to be awarded. If within two (2) years from the date the earnest money was deposited in the Broker's trust account, the parties have not provided the Broker with such written release or written notice that such legal action to resolve the dispute has been filed, the Broker shall return the earnest money to the BUYER with no further notice to the SELLER.

Page 1 of 6   ____(SELLER's initials) ____(BUYER's initials)   Offer to Purchase MKT 9/15/2017

17-50236-amk    Doc 151    FILED 09/13/18    ENTERED 09/13/18 10:16:52    Page 9 of 14

[FOR PROPERTY LOCATED AT: Glengarry Dr Lot 130-A / 03 016 00 00 173 001                                                             ]

59 **CLOSING** All funds and documents necessary for the completion of this transaction shall be placed in escrow with
60 the lending institution or escrow agent on or about 07/23/2018_____ and title shall be
61 transferred on or about 07/24/2018_____.
62 **POSSESSION** SELLER shall deliver possession to BUYER on 07/24/2018_____(date) 5:00_____(time)
63 ☐ AM ☑ PM, provided the title has transferred. Subject to BUYER'S rights, if any, the premises may be occupied
64 by the SELLER free for _____ days. If the SELLER is to occupy the property after this period, see "Seller's
65 Occupancy After Title Transfer" Addendum.
66
67 **TITLE** SELLER shall convey a marketable title to BUYER by general warranty deed and/or fiduciary deed, if
68 required, with dower rights released, free and clear of all liens and encumbrances whatsoever, except a) any
69 mortgage assumed by BUYER, b) such restrictions, conditions, easements (however created) and encroachments
70 as do not materially adversely affect the use or value of the property, c) zoning ordinances, if any, and d) taxes and
71 assessments, both general and special, not yet due and payable. SELLER shall furnish an Owner's Fee Policy of
72 Title Insurance from Venture Land Title Agency / Lawyers Title OR Ohio Real Title (escrow) in the amount of the
73 purchase price with cost of the insuring premium split equally between SELLER and BUYER. If the property is
74 torrenized, SELLER shall furnish an Owner's Duplicate Certificate of Title, and a United States Court Search and Tax
75 Search. SELLER shall have thirty (30) days after notice to remove title defects. If unable to do so, BUYER may either
76 a) accept Title subject to each defect without any reduction in the purchase price or b) terminate this AGREEMENT,
77 in which case neither BUYER, SELLER nor any REALTOR(S)® shall have any further liability to each other, and both
78 BUYER and SELLER agree to sign a mutual release, whereupon the Broker shall return the earnest money to
79 BUYER.
80
81 **PRORATIONS** General taxes, annual maintenance fees, subdivision charges, special assessments, city and county
82 charges and tenant's rents shall be prorated as of the date of the title transfer. Taxes and assessments shall be
83 prorated based upon the latest available tax duplicate. However, if the tax duplicate is not yet available or the
84 improved land is currently valued as land only, taxes and assessments shall be prorated based upon 35% of the
85 selling price times the millage rate. The escrow agent is instructed to contact the local governmental taxing authority,
86 verify the correct tax value of the property as of the date of title transfer and pay the current taxes due to the date of
87 the title transfer. If the property being transferred is new construction and recently completed or in the process of
88 completion at the time the AGREEMENT was signed by the parties, the escrow agent is instructed to make a good
89 faith estimate of the taxes to be owed on the value of the improved property to the date of title transfer and reserve
90 sufficient funds in escrow from SELLER's net proceeds to pay those taxes when they become due and payable after
91 title transfer. The escrow agent is instructed to release the balance of the funds on reserve once they receive notice
92 from the local county auditor that the taxes on the land and improvements have been paid in full to the date of title
93 transfer. BUYER acknowledges that the latest available tax duplicate may not reflect the accurate amount of taxes
94 and assessments that will be owed. SELLER agrees to reimburse BUYER directly outside of escrow for any increase
95 in valuation and the cost of all passed or levied, but not yet certified, taxes and assessments, if any, prorated to the
96 date of title transfer. SELLER is not aware of any proposed taxes or assessments, public or private, except the
97 following:
98
99 _____
100 In the event the property shall be deemed subject to any agricultural tax recoupment (C.A.U.V.), ☐BUYER
101 ☐SELLER agrees to pay the amount of such recoupment.
102
103 **CHARGES/ESCROW INSTRUCTIONS** This AGREEMENT shall be used as escrow instructions subject to the
104 Escrow Agent's usual conditions of acceptance. SELLER shall pay the following costs through escrow: a) real estate
105 transfer tax; b) any amount required to discharge any mortgage, lien or encumbrance not assumed by BUYER; c)
106 title exam and one-half the cost of insuring premium for Owners Fee Policy of Title Insurance; d) prorations due
107 BUYER; e) percentage Broker's commissions in accordance with the listing agreement; f) one-half of the escrow
108 (unless VA/FHA regulations prohibit payment of escrow fees by BUYER in which case SELLER shall pay the entire
109 escrow fee); g) the cost of preparation of the deed; h) SELLER shall pay directly all utility charges to the date of title
110 transfer or date of possession, whichever is later. The escrow agent shall withhold $_____ from the
111 proceeds due FOR SELLER for the SELLER's final water and sewer bills. Tenant security deposits, if any, shall be
112 credited in escrow to the BUYER.
113
114 BUYER shall pay the following through escrow (unless prohibited by VA/FHA regulations): a) one-half of the escrow
115 fee; b) one-half the cost of insuring premiums for Owners Fee Policy of Title Insurance; c) all recording fees for the
116 deed and any mortgage; d) if BUYER is represented by BHHS Professional Real_____ _____00 for brokerage
117 services rendered. BUYER shall secure new insurance on the property as of the Closing. If the closing cannot occur

**EXHIBIT A**

Page 2 of 6      [  ] (SELLER's initials) [  ] (BUYER's initials)      Offer to Purchase MKT 9/15/2017

[FOR PROPERTY LOCATED AT: Glengarry Dr Lot 130-A / 03 016 00 00 173 001 _____ ]

118 by the scheduled closing date due to any government regulation or lender requirement, the date of closing shall be
119 extended for the period necessary to satisfy these requirements, not to exceed fourteen (14) business days. The
120 Selling and Listing Brokers request a copy of the Closing Disclosure (or any other settlement statement), and the
121 Buyer(s) and Seller(s) hereby authorize and instruct the escrow agent to send a copy to their respect Broker(s)
122 promptly after closing, which the Broker(s) may share with the other parties to the transaction.
123
124 **HOME WARRANTY** BUYER acknowledges the availability of an HMS MasterPEACE Limited Home Warranty (with a
125 deductible) which ☐ will ☒ will not be provided at a cost of $_____ charged to ☐ SELLER ☐ BUYER in
126 escrow at closing. SELLER and BUYER acknowledge that this LIMITED HOME WARRANTY will not cover any pre-
127 existing defects in the property. Broker may receive a fee from the home warranty provider.
128
129 **INSPECTION** This AGREEMENT shall be subject to the following inspection(s) by a qualified inspector of BUYER's
130 choice within the specified number of days after formation of a binding agreement, BUYER assumes sole
131 responsibility to select and retain a qualified inspector for each requested inspection and releases Broker of any and
132 all liability regarding the selection or retention of the inspector(s). If BUYER does not elect inspections, BUYER
133 acknowledges that BUYER is acting against the advice of BUYER's agent and broker. BUYER understands that all
134 real property and improvements may contain defects and conditions that are not readily apparent and which may
135 affect a property's use or value. BUYER and SELLER agree that the REALTORS® and agents do not guarantee and
136 in no way assume responsibility for the property's condition. BUYER acknowledges that it is BUYER's own duty to
137 exercise reasonable care to inspect and make diligent inquiry of the SELLER or BUYER's inspectors regarding the
138 condition and systems of the property. INSPECTIONS REQUIRED BY ANY STATE, COUNTY, LOCAL
139 GOVERNMENT OR FHA/VA DO NOT NECESSARILY ELIMINATE THE NEED FOR THE INSPECTIONS LISTED
140 BELOW.
141
142 **WAIVER** _____ (BUYER's Initials) BUYER elects to waive each professional inspection to which BUYER has
143 not indicated "YES." Any failure by BUYER to perform any inspection indicated "YES" herein is a waiver of such
144 Inspection and shall be deemed absolute acceptance of the Property by BUYER in its "AS IS" condition.
145

| Choice | | Inspection | | Expense | |
|---|---|---|---|---|---|
| Yes | No | | | BUYER's | SELLER's |
| ☐ | ☒ | GENERAL HOME | w/i ____ days after acceptance of offer | ☐ | ☐ |
| ☐ | ☒ | SEPTIC SYSTEM | w/i ____ days after acceptance of offer | ☐ | ☐ |
| ☐ | ☒ | PEST/ WOOD DESTROYING INSECTS | w/i ____ days after acceptance of offer | ☐ | ☐ |
| ☐ | ☒ | WATER POTABILITY | w/i ____ days after acceptance of offer | ☐ | ☐ |
| ☐ | ☒ | WELL FLOW RATE | w/i ____ days after acceptance of offer | ☐ | ☐ |
| ☐ | ☒ | RADON GAS | w/i ____ days after acceptance of offer | ☐ | ☐ |
| ☐ | ☒ | _____ | w/i ____ days after acceptance of offer | ☐ | ☐ |

163 After each Inspection requested, BUYER shall have three (3) days to elect one of the following: a) remove the
164 inspection contingency and accept the property in its "AS IS" PRESENT PHYSICAL CONDITION; or b) accept the
165 property subject to SELLER agreeing to have specific items that were either previously disclosed in writing by the
166 SELLER or identified in a written inspection report, repaired by a qualified contractor in a professional manner
167 SELLER'S expense; or c) Terminate this AGREEMENT if written inspection report(s) identify material latent defects
168 NOT previously disclosed in writing by the SELLER and any cooperating real estate Broker.
169
170 If the property is accepted in its "AS IS" PRESENT PHYSICAL CONDITION, BUYER agrees to sign an Amendment
171 to this AGREEMENT removing the inspection contingency and this AGREEMENT will proceed in full force and effect.
172 If the property is accepted, subject to the SELLER repairing specific defects, BUYER shall provide to SELLER a copy
173 of the inspection report(s) and sign an Amendment to this AGREEMENT removing the inspection contingency and
174 identifying the defects that are to be repaired. SELLER and BUYER shall have three (3) days from SELLER's receipt
175 of the written list of defects and the inspection report(s) to agree in writing which defects, if any, will be corrected at
176 SELLER's expense. If a written agreement is not signed by SELLER and BUYER within those three (3) days, this
177 AGREEMENT is null and void and SELLER and BUYER agree to sign a mutual release. If the BUYER elects to
178 terminate this AGREEMENT based upon newly discovered material latent defects in the property, BUYER shall
179 provide a copy of the written inspection report to the SELLER and both parties agree to promptly sign a mutual

Page 3 of 6 ____ ____ (SELLER's Initials) ____ ____ (BUYER's Initials) Offer to Purchase MKT 9/15/2017

[FOR PROPERTY LOCATED AT: Glengarry Dr Lot 130-A / 03 016 00 00 173 001                                    ]

180 release. Upon signing of a mutual release by SELLER and BUYER, the earnest money deposit shall be returned to
181 the BUYER without any further liability of either party to the other or to Broker(s). The BUYER and SELLER can
182 mutually agree **IN WRITING** to extend the dates for inspections, repairs, or to exercise their right to terminate the
183 AGREEMENT. SELLER agrees to provide reasonable access to the property for BUYER to review and approve any
184 conditions corrected by SELLER.
185
186 **LEAD-BASED PAINT** ☐Yes  ☐No  BUYER shall have the right to have a risk assessment or inspection of the
187 property by a qualified inspector, for the presence of lead-based paint and/or lead based paint hazards at BUYER's
188 expense within ten (10) days after formation of a binding agreement. (Intact lead-based paint that is in good condition
189 is not necessarily a hazard. See EPA pamphlet "Protect Your Family From Lead In Your Home" for more
190 information.) In the event existing deficiencies or corrections are identified by the inspector in its written report,
191 BUYER shall have the right to terminate this AGREEMENT or request that the SELLER repair the specific existing
192 deficiencies noted on the written inspection report. In the latter event, BUYER agrees to immediately provide
193 SELLER with a copy of the written inspection and/or risk assessment report. Upon receipt of the inspection report
194 and BUYER's request for repairs, SELLER will have the option to either agree to correct the deficiencies identified in
195 the inspector's written report or decline to do any repairs. If SELLER elects to correct the deficiencies, SELLER
196 agrees to provide BUYER, prior to Title Transfer, with a certificate from a qualified risk assessor or inspector
197 demonstrating that the deficiencies have been remedied. If the SELLER declines to correct the deficiencies, BUYER
198 may elect to terminate this AGREEMENT or accept the property in its "AS IS" condition. BUYER may remove this
199 right of inspection at any time without SELLER's consent.
200
201 BUYER ☒ HAS_____ (BUYER's initials) received a copy of the EPA pamphlet entitled "PROTECT YOUR
202 FAMILY FROM LEAD IN YOUR HOME" and a copy of the "DISCLOSURE ON LEAD-BASED PAINT AND/OR
203 LEAD-BASED PAINT HAZARDS."
204
205 BUYER ☐ HAS NOT_____ (BUYER's initials) received a copy of the EPA pamphlet entitled "PROTECT
206 YOUR FAMILY FROM LEAD IN YOUR HOME" and a copy of the "DISCLOSURE ON LEAD-BASED PAINT
207 AND/OR LEAD-BASED PAINT HAZARDS (disclosure form)." This offer is subject to the SELLER completing the
208 disclosure form and BUYER's review and approval of the information contained on the disclosure form within three
209 (3) business days from receipt.
210
211 **MEGAN'S LAW** SELLER warrants that SELLER has disclosed to BUYER all notices received pursuant to Ohio's sex
212 offender law. The BUYER acknowledges that the information disclosed may no longer be accurate and agrees to
213 inquire with the local Sheriff's office. BUYER agrees to assume the responsibility to check with the local Sheriff's
214 office for additional information. BUYER will rely on BUYER'S own inquiry with the local Sheriff's office as to
215 registered sex offenders in the area and will not rely on SELLER or any real estate agent involved in the transaction.
216
217 **CONDITION OF PROPERTY** BUYER has examined the property and agrees that the property is being purchased in
218 its "AS IS" PRESENT PHYSICAL CONDITION including any defects disclosed by the SELLER on the State of Ohio
219 Residential Property Disclosure Form or identified by any inspections requested by either party.  SELLER agrees to
220 notify BUYER in writing of any additional disclosure items that arise between the date of acceptance and the date of
221 recording of the deed. BUYER has not relied upon any representations, warranties or statements about the property
222 (including but not limited to its condition or use) unless otherwise disclosed on this AGREEMENT or on the
223 Residential Property Disclosure Form. Buyer agrees to conduct their own investigation of any off-site conditions.
224
225 BUYER ☒ HAS_____ (BUYER's initials) received a copy of the Residential Property Disclosure Form signed
226 by SELLER on_____ (date) prior to writing this offer.
227
228 BUYER ☐ HAS NOT_____ (BUYER's initials) received a copy of the Residential Property Disclosure Form.
229 This offer is subject to the SELLER completing the Residential Property Disclosure Form and BUYER's review and
230 approval of the information contained on the disclosure form within three (3) business days from receipt.
231
232 BUYER acknowledges_____ (BUYER's initials) SELLER will not complete or is exempt from completing the
233 Residential Property Disclosure Form pursuant to Ohio Rev. Code Section 5302.30.
234 SELLER shall pay all costs for the repair of any gas and/or water line leak found between the street and foundation
235 at the time of transfer of utilities. SELLER agrees to comply with any and all local governmental point of sale laws
236 and/or ordinances. SELLER will promptly provide BUYER with copies of any notices received from governmental
237 agencies to inspect or correct any current building code or health violations. If applicable, BUYER and SELLER shall
238 have_____ (___) days after receipt by BUYER of all notices to agree in writing which party will be responsible
239 for the correction of any building code or health violation(s). In the event BUYER and SELLER cannot agree in

[FOR PROPERTY LOCATED AT: Glengarry Dr Lot 130-A / 03 016 00 00 173 001 ]

240 writing, this AGREEMENT can be declared null and void by either party.
241 **REPRESENTATIONS AND DISCLAIMERS** BUYER acknowledges that the SELLER completed the Residential
242 Property Disclosure Form and agrees to hold the Broker(s) and their agents harmless from any misstatements or
243 errors made by the SELLER on the form. BUYER also acknowledges and agrees that the Broker(s) and their agents
244 have no obligation to verify or investigate the information provided by the SELLER on that form. BUYER hereby
245 acknowledges that any representation by SELLER or the real estate agent(s) regarding the square footage of the
246 rooms, structures or lot dimensions, homeowner's fees, public and private assessments, utility bills, taxes and
247 special assessments are approximate and not guaranteed. Please list any and all verbal representations made by
248 Broker(s) or their agents that you relied upon when purchasing this property (if none, write "none"):
249 none
250

251 **DAMAGE** If any building or other improvements are destroyed or damaged in excess of ten percent (10%) of the
252 purchase price prior to title transfer, BUYER may either accept the insurance proceeds for said damage (with
253 SELLER paying any deductible) and complete this transaction or may terminate this AGREEMENT and receive the
254 return of all deposits made. If such damage is less than ten percent (10%) of the purchase price, SELLER shall
255 restore the property to its prior condition.
256

257 **FAIR HOUSING LAWS** It is illegal, pursuant to the Ohio Fair Housing Law, Division (H) of Section 4112.02 of the
258 Revised Code and the Federal Fair Housing Law, 42 U.S.C.A. 3601, to refuse to sell, transfer, assign, rent, lease,
259 sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations,
260 or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status
261 as defined in Section 4112.01 of the Revised Code, ancestry, military status as define in that section, disability as
262 defined in that section, or national origin; or to so discriminate in advertising the sale or rental of housing, in the
263 financing of housing, or in the provision of real estate brokerage services. It is also illegal, for profit, to induce or
264 attempt to induce a person to sell or rent a dwelling by representations regarding the entry into the neighborhood of a
265 person or persons belonging to one of the protected classes.
266

267 **BINDING AGREEMENT** Upon written acceptance and then either written or verbal notice of such acceptance to the
268 last-offering party, this offer and any addenda listed below shall become a LEGALLY BINDING AGREEMENT UPON
269 BUYER AND SELLER and their heirs, executors, administrators and assigns and shall represent the entire
270 understanding of the parties regarding this transaction. All counter-offers, amendments, changes or deletions to this
271 AGREEMENT shall be in writing and be signed by both BUYER and SELLER. Facsimile signatures shall be deemed
272 binding and valid. This AGREEMENT shall be used as escrow instructions subject to the Escrow Agent's usual
273 conditions of acceptance. For purposes of this AGREEMENT, "days" shall be defined as calendar days.
274 **This AGREEMENT is a legally binding contract, If you have any questions of law, consult your attorney.**
275

276 **ADDENDA** The additional terms and conditions in the attached addenda are made part of this AGREEMENT:
277 ☒Agency Disclosure Form, ☐Residential Property Disclosure Form, ☐VA, ☐FHA, ☐FHA Home Inspection
278 Notice, ☐Condo, ☐House Sale Contingency, ☐House Sale Concurrency, ☒Lead Based Paint,
279 ☐ Other
280 The terms and conditions of any addenda supersede any conflicting terms in this AGREEMENT.
281

282 **FULL SERVICE COMMITMENT** Buyer's and Seller's initials indicate that a full explanation of the services and
283 benefits available through BHHS Professional Realty affiliated Mortgage and Title services has been provided.
284 ☐ (Buyer) ☐ (Seller).
285

[FOR PROPERTY LOCATED AT: Glengarry Dr Lot 130-A / 03 016 00 00 173 001 ]

286 **DURATION OF OFFER** This offer shall be open for acceptance until _____ at _____ ☐ AM ☐ PM
287
288
289 (BUYER Signature) (Date)  (BUYER Signature) (Date)
290 David Novotny
291 (Print BUYER Name)  (Print BUYER Name)
292 6777 Dana Ave, Hudson, OH 44236
293 (BUYER Address and ZIP Code)  (BUYER Phone No.)
294 dnovotn2@kent.edu
295 (BUYER Email)

296 **DEPOSIT RECEIPT** Receipt is hereby acknowledged of $ _____ earnest money by ☐ check ☐ note,
297 subject to terms of the above offer.
298
299 **ACCEPTANCE** SELLER accepts the above offer and irrevocably instructs, the escrow agent to pay from
300
301 SELLER'S escrow funds a commission of per MLS _____ percent ( _____ %)
302
303 of the purchase price to **BHHS Professional Realty** _____ (Broker)
304
305 **14775 Pearl Rd, Strongsville OH 44136** _____ (Address)
306
307 and per MLS _____ percent ( _____ %) of the
308
309 purchase price to BHHS Professional Realty
310 _____ (Broker)
311
312 as the sole procuring agents in this transaction. _____ (Address)

313 **TITLE** is presently in the name of (please print): _____
314 _____
315
316 (SELLER Signature) (Date)  (SELLER Signature) (Date)
317 Louis A. Telerico
318 (Print SELLER Name)  (Print SELLER Name)
319 545 Bristol Dr, Aurora, OH 44202  216-536-1490
320 (SELLER Address and ZIP Code)  (SELLER Phone No.)
321 loudayone@hotmail.com
322 (SELLER Email)

323 The following information is provided solely for the Multiple Listing Services' use and will be completed by the
324 Brokers or their agents and is not part of the terms of the Purchase Agreement.
325
326 Multiple Listing Information:
327 Michael Kaim / Debbie Nashmy         430767 / 2016006385
328 (Listing agent name)                  (Listing agent license #)
329 BHHS Professional Realty              9388
330 (Listing broker name)                 (Listing broker office #)
331 **Michael Kaim /**                    **430767 /**
332 (Selling agent name)                  (Selling agent license #)
333 **BHHS Professional Realty**          **9388**
334 (Selling broker name)                 (Selling broker office #)

Page 6 of 6    ☐☐ (SELLER's initials) ☐☐ (BUYER's initials)    Offer to Purchase MKT 9/15/2017