IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Case No. 17-50236 |
| ) | Chapter 11 |
| LOUIS ANTHONY TELERICO, ) | Judge Alan M. Koschik |
| ) | |
| Debtor. ) | |
| ) | |

**CREDITOR UNITED STATES OF AMERICA'S OBJECTION TO PLAN CONFIRMATION**

Creditor United States of America (Internal Revenue Service) objects to the confirmation of the Debtor's Plan of Reorganization Version 2.1 ("Plan") [Docket No. 191], and requests a hearing on the same. The Plan should not be confirmed because (1) the Plan does not properly treat the IRS's secured claim, including but not limited to retention of the IRS's liens until payment or discharge, (2) to the extent the Plan seeks to treat the IRS's secured claim as valueless under 11 U.S.C. § 506(a) and thus as a Class 5 general unsecured claim, a separate Federal Rule of Bankruptcy Procedure ("FRBP") 3012 motion must be filed for a valuation determination in a separate contested matter, (3) the Plan is not feasible because the Debtor proposes to fund the Plan in part through his Social Security income, which is subject to the IRS's liens, and his "pension income," which may be subject to such liens depending on the nature of the retirement account and contributions thereto, (4) in the Debtor's pending adversary proceeding (AP No. 18-5008), the issue of whether the Debtor-Stifel Nicolaus & Co., Inc. ("Stifel") settlement resulted in a Section 551 event by which a portion of Stifel's deed of trust is void under Section 506(d) for the benefit of the estate needs to be resolved before the Plan can be confirmed, and (5) the Plan was not filed in good faith, as the Debtor now claims his non-exempt

personal property is essentially worthless but has a total value on his schedules exceeding $880,000. Therefore, the Court should deny confirmation of the Debtor's Plan.

## BACKGROUND FACTS

### A. The Debtor's Bankruptcy Case and IRS's Proof of Claim

The Debtor filed a petition for Chapter 11 bankruptcy relief on February 5, 2017. In his schedules, the Debtor stated that he has assets with a value of $12,964,088.00, comprised of $11,916,000.00 in real property and $1,048,088.00 in personal property. *See* Docket No. 15, p. 1. The Debtor also stated that he has only $4,212,499.00 in liabilities to holders of secured claims. *See* Docket No. 15, p. 1. The IRS is listed as a holder of an undisputed, oversecured claim in the amount of $400,000.00 with collateral valued at $10,966,000.00; the claim is not listed as contingent, unliquidated, or disputed. *See* Docket No. 15, p. 12; *see also* FRBP 3003(b)(1) (undisputed claims are prima facie valid).

Debtor's Schedule A lists three real properties: (1) Debtor's residence at 545 Bristol Drive, Aurora, Ohio ("Home") with a value of $10,966,000.00, (2) one parcel of vacant land located next to the Home (the "Bristol Parcel") with a value of $275,000.00, and (3) two parcels of vacant land located next to the Home (the "Glengarry Parcels") with a value of $675,000.00. *See* Docket No. 15, at pp. 3-4. According to the Debtor's Schedule A, title to all three properties is in the name of the Louis A. Telerico Amended and Restated Revocable Trust.[1] *See* Docket No. 15, at pp. 3-4.

On October 25, 2017, the IRS filed an amended proof of claim in the amount of $498,750.74, which asserts a secured claim in the amount of $448,817.10 for 2009 and 2010

---

[1] The Plan defines "Trust as the "Louis A. Telerico 210 Amended and Restated Revocable Trust Indenture dated February 1, 2010." *See* Plan, p. 7, section 6.2(a).

2

federal income taxes, and a general unsecured claim in the amount of $49,933.64 for 2009 federal income taxes. [Claims Register, Claim No. 7-2.] The Debtor has not objected to the IRS's proof of claim, and the proof of claim is "deemed allowed" as filed in accordance with 11 U.S.C § 502(a).

Notices of the IRS's federal tax liens were filed with the Recorder of Portage County in accordance with 26 U.S.C. § 6323(f) and Baldwin's Ohio Revised Code Annotated, Title 3, § 317.09. On July 27, 2011, the IRS recorded a Notice of Federal Tax Lien ("NFTL") regarding the Debtor's 2009 federal income tax liability, with the Portage County Recorder. On April 2, 2012, the IRS recorded an NFTL regarding the Debtor's 2010 federal income tax liability, with the Portage County Recorder.

### B.     Pending Adversary Proceeding

The Debtor is currently the Plaintiff in an adversary proceeding (AP No. 18-5008) against the United States and several other secured creditors with respect to the real properties described above. With respect to the United States, the Debtor alleges only that the IRS holds tax liens against the Debtor for unpaid income taxes, that "[b]ecause the tax liens are against the Debtor they did not attach to the assets in the Trust and in particular the Real Estate," and that "[t]he tax liens are junior in priority to other liens against the Real Estate and pursuant to 11 U.S.C. § 506 there is no value securing the tax liens therefore the IRS…[is] an unsecured creditor[] of the estate." Third Amended Adversary Proceeding Complaint [AP Docket No. 66], at p. 7.

Some of the adversary proceeding issues are no longer in dispute. Through summary judgment briefing, it appears that the Debtor has conceded that the IRS"s federal tax liens attach to the Debtor's interest in the Home, the Bristol Parcel, and the Glengarry Parcels, even though each of these properties is titled in the name of a "trust." Also, the United States and the Debtor

agree that, with respect to the Home, (1) the IRS is in fourth position behind the secured claims of the Portage County Treasurer ("Portage County"), Bank of America, and Stifel, and (2) with respect to the Bristol Parcel and the Glengarry Parcels, the IRS is in third position behind the secured claims of Portage County and Stifel.

One remaining issue in the adversary proceeding is whether the Debtor may use the adversary proceeding to "strip off" the IRS's liens as the Home, the Bristol Parcel, and/or the Glengarry Parcels and no other assets, based on a valuation determination as to those properties. The United States has argued that the Debtor may not use the adversary proceeding for this purpose. Instead, the Debtor should have filed a Rule 3012(c) motion or a claim objection to determine the value of all of the collateral securing the IRS's claim (including personal property collateral). This issue will be heard at the summary judgment hearing in the adversary proceeding.

Another issue currently being litigated in the adversary proceeding is whether the Debtor-Stifel settlement resulted in a Section 551 event by which a portion of Stifel's deed of trust on the Real Estate is void under Section 506(d) for the benefit of the estate. The United States has argued that the Debtor-Stifel settlement did not create a Section 551 event and merely resulted in a downward adjustment to the amount of Stifel's secured claim. This issue will be heard at the summary judgment hearing in the adversary proceeding.

**C.     Debtor's Plan**

On February 15, 2019, the Court entered an order approving the Debtor's Disclosure Statement Version 2.1.1 ("Disclosure Statement"). [Docket No. 210.]

The Debtor's Plan, filed on December 14, 2018, creates a Class 4 secured claim for taxing authorities, including the IRS. The Plan proposes to treat the IRS's claim as follows:

4

17-50236-amk    Doc 226    FILED 03/19/19    ENTERED 03/19/19 15:55:54    Page 4 of 12

> Arguably the Real Estate and the Debtor Claims are subject to the IRS lien as a federal tax lien extends to all real and personal property of the Debtor. The Debtor believes that there is no value securing the IRS claim as there are prior liens that exceed the value of the Real Estate, there is little to no value to the Debtor Claims and that all of the IRS Claim is a general unsecured claim that will be paid prorate with Class 5. Nevertheless the IRS lien will be transferred to the proceeds of sale of the Trust Assets (that are prepetition assets of the estate) subject to later determination by the Court or prior order from the Court or approved agreed judgment.

Plan, at p. 5.

## ARGUMENT

### A. The Plan Fails to Properly Treat the IRS's Secured Claim for 2009 and 2010 Income Taxes.

The Plan cannot be confirmed because it does not properly treat the IRS's secured claim for the Debtor's 2009 and 2010 income tax liabilities. On October 25, 2017, the IRS filed an amended proof of claim for a secured claim in the amount of $448,817.10 for 2009 and 2010 federal income tax liabilities.

In a nonconsensual plan confirmation, the proposed plan must propose the following treatment of secured claims: (1) retain liens and make deferred cash payments totaling at least the allowed amount of the secured claim, (2) payment through a section 363 sale of assets, or (3) realization of the "indubitable equivalent" of the secured claim. *See* 11 U.S.C. § 1129(b)(2)(A).

The Plan as currently stated does not provide for retention of liens or payment of the allowed amount of the secured claim in full. Indeed, as to the Home, the Plan improperly provides that the Home will be transferred free and clear of the tax liens. *See* Docket No. 191, p. 7, section 6.2(a). The proposed discharge of the tax liens is improper, and the Court should adequately protect the secured claim of the IRS. *See* 11 U.S.C. §§ 361 and 363(e). Even if the Debtor is proposing to "strip off" the IRS's liens on the Home through the Plan (using a valuation determination), the Plan should state that the IRS shall retain its liens on the Home

5

until the bankruptcy discharge order is entered, and that the liens will be discharged from the Home (as well as any other property of the estate) only to the extent the underlying federal income tax debt is discharged under 11 U.S.C. § 1141.[2] As for the Bristol Parcel and the Glengarry Parcels, the Plan should state that the IRS shall retain its liens on those Parcels until they are sold, with its liens attaching to the sale proceeds and remaining attached until payment. If the Debtor is proposing to "strip off" the IRS's liens on the Bristol Parcel and the Glengarry Parcels through the Plan (using a valuation determination),[3] the Plan should state that the IRS will retain its liens on those parcels and make deferred cash payments totaling the allowed amount of the secured claim.

As for the Debtor's personal property, it should be noted that federal tax liens under 26 U.S.C. § 6321 attach to all property and rights to property belonging to the Debtor, including personal property (whether exempt or non-exempt under state law). The Debtor's schedules set forth far more than $448,817.10 in personal property, all of which is subject to the IRS's tax liens. The Debtor has not demonstrated an inability to collect those assets. The Plan proposes to have the Creditor Trust sell all of Debtor's non-exempt personal property. The Plan should specifically state that the IRS will retain its liens on all of the Debtor's non-exempt personal property until it is sold, with the liens transferring to the proceeds of sale and remaining attached until payment. The Plan should also specifically state that the IRS will retain its liens on all of the Debtor's personal property.

---

[2] As will be discussed, the Debtor should have valued the IRS's entire secured claim and collateral through a Rule 3012(c) motion or claim objection, rather than attempt to "strip off" the IRS's liens on specific assets through the pending adversary proceeding.

[3] This assumes that the Debtor does not prevail on the Section 551 issue in the adversary proceeding, in which case there is clearly equity remaining for the IRS's secured claim after Stifel receives its $125,000 from its settlement with the Debtor.

6

### B. To the Extent that the Plan Treats the IRS's Secured Claim as a Class 5 General Unsecured Claim, a Rule 3012 Motion Must be Filed for a Valuation Determination in a Separate Contested Matter.

The Plan contains a Class 5 for general unsecured claims, stating that "Class 5 Creditors consist of the remaining balance due for Claims that were originally secured by the Debtor's Home other than Classes 1, 2, 3, or 4, and all other unsecured Claims, including Class 3 deficiency claims." Plan, at p. 5. To the extent that the Plan treats the IRS's secured claim as wholly unsecured as to the property of the estate, including the Home, and thus a Class 5 general unsecured claim, a Rule 3012 motion must be filed for a valuation determination under 11 U.S.C. § 506(a) in a contested matter, and it would be improper to conduct any collateral valuation without such a contested matter. Rule 3012(c) as amended on December 1, 2017, states that "[a] request to determine the amount of a secured claim of a governmental unit may be made only by motion or in a claim objection after the governmental unit filed a proof of claim or after the time for filing one under Rule 3002(c)(1) has expired." FRBP 3012(c). The amended Rule 3012 "shall govern…insofar as just and practicable…[in] all proceedings then pending [on December 1, 2017]. Preface to Amended Bankruptcy Rules, 319 F.R.D. 801, 802.

To date, the Debtor has not filed a Rule 3012 motion. The Debtor's third amended adversary proceeding complaint only alleges that the IRS's liens are wholly unsecured as to only the Home, the Bristol Parcel, and/or the Glengarry Parcels, and no other assets.

In addition, the language at page 5 of the Plan referenced above only addresses claims with respect to the Home, and does not address claims secured by the Bristol Parcel or the Glengarry Parcels. *See* Plan, p. 5. To the extent that the Plan treats the IRS's secured claim as wholly unsecured as to either of those parcels of real estate, a Rule 3012 motion must be filed for a valuation hearing if there is a question about the value of the Debtor's collateral.

### C. The Plan Is Not Feasible Because it Proposes Funding Through the Debtors' Social Security Income, Which Is Subject to the IRS's Liens, and Retirement Plan Assets, Which May be Subject to Such Liens.

The Plan proposes to fund the Plan in part through the Debtor's Social Security income. Plan, at p. 8. However, a taxpayer's fully vested right to Social Security benefits is subject to the IRS's liens. *See In re Anderson*, 250 BR. 707, 710-11 (Bankr. D. Mont. 2000) (all "rights to property" within 26 U.S.C. § 6321 includes taxpayer's vested prepetition right to receive monthly Social Security payments for the rest of his life); *In re Roberts*, 219 B.R. 573, 575 (Bankr. D. Or. 1997) ("[T]he Debtor's right to receive future Social Security benefits constitutes a property interest attachable by a federal tax lien."). *See also In re Bailey*, 574 B.R. 15, 18 (Bankr. D. Maine) (granting relief from the automatic stay to enforce federal tax liens on post-petition Social Security income). This is not to say that no debtor receiving Social Security income cannot ever fund a plan voluntarily with such income. To the contrary, once a debtor receives a Social Security payment, it becomes subject to alienation and arguably enters the estate under § 1115 whether a debtor wished to contribute it or not. But, where the IRS has pre-petition tax liens against vested rights to Social Security income, the liens encumber the income payments as they are paid out because the debtor's rights to future Social Security payments as of the petition date would be subject to tax liens under the broad language of 26 U.S.C. § 6321, which attached to "all rights to property." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985). As a result, each monthly payment would reach the debtor subject to the tax liens and would therefore constitute cash collateral such that a debtor subject to pre-petition federal tax liens would be prohibited from using Social Security income to fund a plan unless the IRS consents, or unless adequate protection is provided to the IRS under §§ 361 and 363.

8

17-50236-amk    Doc 226    FILED 03/19/19    ENTERED 03/19/19 15:55:54    Page 8 of 12

The Debtor also proposes to fund the Plan in part through "pension income." Plan, at p. 8. His schedules disclose two "pensions": (1) a retirement account with Metlife with a value of $11,434, and (2) a retirement account with Merrill Lynch with a value of $142,271.00. *See* Docket No. 15, at pp. 6-7. Based on the briefing in the Debtor's Amended Motion for Turnover of Property and to Show Cause, the Debtor's account with Merrill Lynch is not a pension account, but instead is a deferred compensation plan account. *See* Docket Nos. 217, 225. It is unclear whether the deferred compensation plan (which is commonly referred to as "409A plan" in reference to 26 U.S.C. § 409A) is an ERISA-qualified plan, but the Debtor believes it is not. *See* Docket No. 225, at p. 2. The IRS's federal tax liens would attach to the funds in the Merrill Lynch deferred compensation plan account if they originated from pre-petition contributions. *See Miles v. Comm'r*, 399 F. App'x 231, 233 (9th Cir. Oct. 7, 2010) (IRA account case); *In re Raihl*, 152 B.R. 615, 619 (9th Cir. B.A.P.) (401(k) account case); *In re Deppisch*, 227 B.R. 806, 809 (Bankr. S.D. Ohio 1998) (IRA account case); *In re Quillard*, 150 B.R. 291, 295 (Bankr. D. R.I. 1993) (IRS account case); *Iannone v. Comm'r*, 122 T.C. 287, 292-93 (2004) (401(k) account case). Given that the Debtor was no longer employed with Merrill Lynch as of the petition date, it is unlikely that the funds currently residing in the account relate to post-petition contributions. Nevertheless, discovery is needed regarding the source of funds in the account, and whether the deferred compensation plan is an ERISA-qualified plan.

The IRS's federal tax liens may also attach to funds in the Debtor's Metlife retirement account, but discovery is needed regarding the nature of this retirement plan and the source of funds in the plan account.

9

### D. The Section 551 Issue in the Debtor's Pending Adversary Proceeding Must be Resolved Before the Plan Can be Confirmed.

As stated above, the Debtor has a pending adversary proceeding involving several secured creditors, among them the United States. One remaining issue is whether the Debtor-Stifel settlement resulted in a Section 551 event which caused a portion of Stifel's deed of trust to be void under Section 506(d) for the benefit of the estate. Resolution of this issue will determine whether the IRS will receive any distribution from proceeds of sale of the Bristol Parcels and the Glengarry Parcels. The Plan cannot be confirmed until the Section 551 issue is resolved because until that time, it is unclear how the IRS's secured claim will be treated.

### E. The Debtor's Plan Was Not Filed in Good Faith.

The Debtor's Plan was not filed in good faith, which is a requirement of Chapter 11 plan confirmation. 11 U.S.C. § 1129(a)(3). The Debtor valued his non-exempt personal property at a total amount exceeding $880,000 on his bankruptcy schedules, but now he claims those assets are essentially worthless. The Debtor has not explained how he reached this conclusion, or whether his schedules were incorrect in the first place. Therefore, the Plan should not be confirmed because it was not filed in good faith.

### CONCLUSION

For all of the reasons set forth above, confirmation of the Plan should be denied.

DATED: March 19, 2019

        RICHARD E. ZUCKERMAN
        Principal Deputy Assistant Attorney General
        Tax Division, U.S. Department of Justice

        */s/ Philip Leonard Bednar*
        PHILIP LEONARD BEDNAR
        Trial Attorney, Tax Division
        U.S. Department of Justice
        P.O. Box 55
        Washington, D.C. 20044
        202-307-6415 (v)
        202-514-5238 (f)
        Philip.L.Bednar@usdoj.gov
        WA State Bar No. 41304
        Counsel for Creditor United States of America

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2019, I electronically filed the foregoing Creditor United States of America's Objection to Plan Confirmation with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

- Todd A. Atkinson tatkinson@ulmer.com
- Bryan J. Farkas bjfarkas@vorys.com, caujczo@vorys.com, mdwalkuski@vorys.com
- Scott D. Fink ecfndoh@weltman.com
- Stephen R. Franks amps@manleydeas.com
- Bryan T. Kostura bkostura@mcglinchey.com, hhines@mcglinchey.com, jlucas@mcglinchey.com
- Allison Manayan amanayan@portageco.com
- Michael J. Occhionero mjocolpa@sbcglobal.net
- James W. Sandy jsandy@mcglinchey.com, hhines@mcglinchey.com
- Richard P. Schroeter rschroeter@amer-collect.com, sallman@amer-collect.com, HouliECF@aol.com, jvaughan@amer-collect.com
- Frederic P. Schwieg fschwieg@schwieglaw.com
- David J. Sternberg djsternberg@ameritech.net
- Joshua Ryan Vaughan jvaughan@amer-collect.com, sallman@amer-collect.com,
- Steven L. Wasserman swasserman@westonhurd.com, specek@westonhurd.com
- Maria D. Giannirakis maria.d.giannirakis@usdoj.gov

*/s/ Philip L. Bednar*

PHILIP L. BEDNAR
Trial Attorney
United States Department of Justice, Tax Division

12

17-50236-amk    Doc 226    FILED 03/19/19    ENTERED 03/19/19 15:55:54    Page 12 of 12