

# Real Estate Purchase Agreement

This Real Estate Purchase Agreement (the "Agreement") is made and entered into as of *May 6 2019* , 2019, (the "Effective Date"), by and between Louis Telerico, Trustee of the Louis A. Telerico 2010 Amended and Restated Revocable Trust Indenture dated February 1, 2010 (the "Seller"), and Trevor M. Cost, Trustee of the Trevor M. Cost Revocable Trust dated September 2, 2009 (the "Buyer"), which parties hereby agree as follows:

Section 1:      Definitions, Purchase and Sale

1.1     Definitions:      The following definitions apply to this **Agreement**:

1.1.1    Property:      The property being purchased consists of approximately .091 acres of vacant land, known as Barrington 2 Lot 133, Permanent Parcel Number 03-016-00-00-177-000 located at Bristol Dr, in the City of Aurora, County of Portage and State of Ohio (the "Property" or "Bristol Parcel"), more fully described on *Exhibit A*, together with: (i) the land; (ii) all appurtenant rights, privileges and easements belonging to the **Property**, (iii) and all surface or subsurface rights, including but not limited to, improvements located above, below and upon the **Property**.

1.1.2    Purchase Price:      The purchase price for the **Property** is the sum of $140,000 dollars (the "Purchase Price"). **Buyer** will deposit with the **Escrow Agent** (defined below), $500.00 upon execution of this **Agreement** (the "Deposit"), which **Deposit** will be credited against the **Purchase Price**, except as otherwise provided herein. **Seller** acknowledges receipt of the **Deposit**. The balance of the **Purchase Price**, in the amount of $139,500 shall be deposited into escrow prior to the closing date. All funds and documents necessary for the completion of this transaction except for the earnest money deposit shall be placed in escrow no later than two days prior to the scheduled date of transfer of title.

1.1.3    Closing Date:      This transaction will be consummated within 60 days from the **Effective Date** or at a date mutually agreeable by the parties.

1.1.4    Title Company: Ohio Real Title, LLC, located at 1742 Georgetown Road, Suite 1, Hudson, Ohio 44236; Attn: Cathy Bretzin & Traci Crooks (234) 380-4370 / (234) 380-4366, will act as the title company for this transaction (the "Title Company")

1

1.1.5    Escrow Agent: Ohio Real Title, LLC, located at 1742 Georgetown Road, Suite I, Hudson, Ohio 44236; Attn: Cathy Bretzin & Traci Crooks (234) 380-4370 / (234) 380-4366, will act as the escrow agent for this transaction (the "**Escrow Agent**").

1.1.6    Broker: Each party hereto hereby represents and warrants to the other that other than, Scott Tinlin, of Platinum Real Estate, they have not utilized the services of any real estate broker or salesman in effecting this transaction and that they will indemnify the other against any claims for commissions made in connection with a breach of that warranty.

1.1.7    Conveyances:    **Seller's** interest in the **Property** will be conveyed to **Buyer** by general warranty deed, in form and substance acceptable to **Buyer** conveying to **Buyer** or **Buyer's** nominee, good and sufficient marketable fee simple title to the **Property**.

1.2    Agreement to Purchase and Sell:    **Seller** hereby agrees to sell the **Property** in its "AS IS" present physical condition to **Buyer**, upon the terms and conditions set forth in this **Agreement**.

1.3    Seller's Obligation to Preserve Title: **Seller** will not, without the prior written approval **Buyer**: enter into any easements, leases, or license agreements involving the **Property**; or allow any liens or other encumbrances affecting the **Property** to be created after the **Effective Date**.

1.4    Compliance With Law: **Seller** has no actual knowledge nor has it received any notice from any governmental authorities that the **Property** or any part thereof, is or is claimed to be in violation of any building code, ordinance, regulation, requirement or statute of any governmental authority having jurisdiction thereof.

1.5    Condemnation: **Seller** has no actual knowledge nor has it received any notice of any actual or planned appropriation or condemnation proceedings with respect to all or any part of the **Property**.

1.6    Full Disclosure: **Seller** is selling the **Property**, as a vacant parcel of land, subject to review and approval of U.S. Bankruptcy Judge Alan M. Koschik, of the United States Bankruptcy Court Northern District of Ohio, Eastern Division, Case No. 17-50236. Other than this action, **Seller** has, to the best of its actual knowledge and belief, disclosed to **Buyer** all material data, facts, and information relative to the **Property** requested of it by **Buyer**, and all such disclosures have been complete and true in all material respects, and **Seller** has not omitted any material fact which is or would be necessary to prevent any such disclosure from being misleading or would prevent any such disclosure from providing **Buyer** with complete information with respect to the **Property**.

1.7    Ownership: **Seller** is the true and lawful fee simple owner of the **Property**.

1.8    Mechanic's Liens: **Seller** warrants and represents that no construction materials or construction services have been furnished or supplied to the **Property** within the last 60 days prior to the **Effective Date**.

2

1.9    Pending Sales:  There are no pending sales for the Property.

1.10    Warranties Limited:  Except as specifically set forth in this **Agreement, Seller** is selling the **Property**, as a vacant parcel of land, subject to approval of the United States Bankruptcy Court Northern District of Ohio, Eastern Division, Case No. 17-50236, free and clear of any interest off any other person or entity other than the **Seller**, and **Buyer** acknowledges that it will accept title to the **Property** at the time of conveyance in its condition "**AS IS**" at that time.

Section 2:    Examinations and Inspections

2.1    Physical Examinations:  **Buyer** and its representatives, at **Buyer's** cost and expense, will have the right to enter upon the **Property** for the purpose of preparing or conducting such investigations and examinations as **Buyer** deems necessary, including by way of example, examinations relating to the preparation of: a metes and bounds survey; the topography and subsurface soil conditions; and so-called "environmental audits" of the **Property** (the "**Examinations**"). **Seller** agrees that it will cooperate fully with the **Buyer** and its representatives in making the **Examinations** and allow them to do any and all acts reasonably necessary or incidental thereto.  **Buyer** will, in connection with conducting the **Examinations**: (i) provide **Seller** with copies of any reports prepared by or on behalf of **Buyer**; (ii) cause the **Property** to be restored to its prior condition if this transaction is not consummated; and (iii) indemnify and hold **Seller** harmless from any and all costs, damages, claims and/or causes of action resulting from the **Examinations**.

2.2    Seller's Obligation: **Seller** agrees to provide **Buyer** with the following documents as soon after the **Effective Date** as reasonably possible:  any documents or information in **Seller's** possession relating to the **Examinations**, including, but not limited to any existing environmental audits or soil investigations, documents permitting access through the adjacent retail service road, evidence of the existence or availability of utilities (i.e., sewer, water, gas and electricity); any documents or information in **Seller's** possession relating to zoning of the **Property**; and a current staked boundary line ALTA survey.  However, any such information will be provided without any representation or warranty from **Seller** whatsoever, especially as to completeness or accuracy of the information contained therein.

2.3    Title Evidence:  **Buyer**, at **Buyer's** cost and expense, will have the right to direct the **Title Company** to conduct an examination of title to the **Property** for the purpose of obtaining such evidence of title as **Buyer** deems necessary (the "**Title Evidence**"). **Buyer** will cause the **Title Company** to promptly deliver copies of any reports, commitments or **Title Evidence** to also be delivered to **Seller** prior to **Closing**.

2.4    Title Defects:  Should the **Property** on or before the **Closing Date** be subject to any defects, encumbrances, liens or other objections to title (a "**Title Defect**") other than those subject to which **Buyer** is obligated to accept title hereunder, **Seller** will have a period of thirty (30) days after written notice thereof from the **Escrow Agent** or the **Buyer**, whichever first occurs, to cure or remove such **Title Defect** and the **Closing Date** will be

3

extended for such purpose. Should such **Title Defect** not be cured or removed within the aforesaid time period, **Buyer** will promptly elect as follows:

2.4.1 Consummate Transaction: **Buyer** will have the right to elect, by providing **Seller** with written notice of such election, to proceed with the transaction and accept title to the **Property** subject to such **Title Defect**. In such event, the obligations of the parties hereunder will not be affected by reason of such **Title Defect** and the same will, if appropriate, be excepted from **Seller's** warranties of title in the **Deed** and under this **Agreement**, and this transaction will be consummated without abatement or reduction of the **Purchase Price**.

2.4.2 Terminate Transaction: **Buyer** will have the right to elect, by providing **Seller** with written notice of such election, to withdraw from this transaction. In such event, all funds paid and documents deposited pursuant to this **Agreement** will be returned to the party who deposited or paid same, and thereupon all parties hereto will be fully released and discharged, each to the other, from any and all liability or obligation hereunder arising.

2.5 Extend Time for Performance: Unless and until **Buyer** elects as set forth in either Section 2.4.1 or 2.4.2 above, time for consummation of the **Agreement** will be deemed extended, and **Seller** will have the continuing duty and obligation to use its best efforts to cure or remove same.

2.6 Contingencies

2.6.1 Contingency Period: **Buyer** has a period of (45) forty-five days following the **Effective Date** (the "**Contingency Period**") in which to do the following: conduct the Examinations; obtain a commitment for any **Title Evidence** required by **Buyer**; and obtain any variances or rezoning of the **Property**, if any, to a use which permits **Buyer's** intended use.

2.6.2 Notice Required: Unless **Buyer** provides **Seller** with written notice on or before the expiration of the **Contingency Period** that all of the Contingencies have been satisfied, **Buyer** will not be obligated to proceed with the consummation of this transaction and all funds paid and documents deposited pursuant to this **Agreement** will be returned to the party who deposited or paid same, and thereupon all parties hereto will be fully released and discharged, each to the other, from any and all liability or obligation hereunder arising. However, unless such notice clearly indicates which of the **Contingencies** were not to **Buyer's** satisfaction, **Seller** will retain the **Deposit** as liquidated damages.

2.6.3 Court Ordered Sale: This **Agreement** is contingent upon approval by U.S. Bankruptcy Judge Alan M. Koschik, in the United States Bankruptcy Court, Northern District of Ohio, Eastern Division Chapter 11 case captioned: *In re Louis A. Telerico*, Case No. 17-50236, as it references and pertains to the sale of the parcel of land (the "**Property**"), also known as the **Bristol Parcel**, referenced in said proceeding as property of the bankruptcy estate of **Seller**.

Section 3: Closing

4

3.1     Instructions, Funds, and Documents: The **Escrow Agent** will serve in such capacity subject to its standard conditions of acceptance of escrow provided, however, that if there is any conflict between such conditions and this **Agreement**, this **Agreement** will govern. All funds and documents necessary for the consummation of this transaction will be deposited in escrow with the **Escrow Agent** on or before the **Closing Date**.

3.2     Closing Procedures: On the **Closing Date**, after filing all documents required to be filed hereunder, the **Escrow Agent** charge the costs and expenses of closing this transaction as follows:

3.2.1   Seller's Charges: (i) its attorney fees; (ii) the cost of any conveyance tax for the transfer of real estate imposed by any city, county or the State of Ohio, if any; (iii) the amount of **Seller's** pro rata share of the real estate taxes and assessments, prorated as of the **Closing Date** using the latest available tax duplicate; (iv) the cost to release the real estate tax lien in the amount of $4,051.89, held by Brad Cromes, Treasurer for Portage County; (v) the cost to release Stifel, Nicolas & Company, mortgages on the Property; (vi) ½ the cost of the examination of title; (vii) ½ the cost of the Title Commitment; (viii) ½ the cost of issuing an Owner's fee Policy of Title Insurance (xiv) the cost of removing any other lien or encumbrance not specifically mentioned; and (x) ½ the cost of the **Escrow Agent's** fee.

3.2.2   Buyer's Charges: (i) its attorney fees; (ii) any funds due pursuant to this **Agreement**; and (iii) ½ the cost of the examination of title; (iv) ½ the cost of the Title Commitment; (v) ½ the cost of issuing an Owner's fee Policy of Title Insurance (vi) the recording of the **Deed**; and (vii) ½ the cost of the **Escrow Agent's** fee.

3.3     Delivery of Documents and Funds:   The **Escrow Agent** will, immediately upon the closing of this transaction, deliver the documents and funds as follows:

3.3.1   To the Seller:   All funds on deposit to the credit of **Seller**, less all charges and deductions required by this **Agreement**; and any documents to be delivered to **Seller** according to the terms and conditions of this **Agreement**; and **Seller's** escrow statement.

3.3.2   To the Buyer:   All funds on deposit to the credit of **Buyer**, less all charges and deductions required by this **Agreement**; the recorded **Deed** and any other documents to be delivered to **Seller** according to the terms and conditions of this **Agreement**.

Section 4:     Miscellaneous

4.1     Entire Agreement: This **Agreement** and any exhibits attached hereto contain all of the agreements, conditions, and covenants between **Seller** and **Buyer** concerning the **Property**. There are no agreements, conditions, or covenants, either oral or written, between **Seller** and **Buyer** concerning the **Property** other than as set forth herein. No amendment or modification hereof will be binding upon **Seller** and **Buyer** unless in writing and signed by the party to be charged therewith.

5

4.2　Terms and Benefit of Agreement: The terms "Buyer" and "Seller" as used herein will include, without limitation, their respective agents, employees, contractors, successors, and assigns.

4.3　Counterparts. This **Agreement** may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

In witness whereof, the parties hereto have executed this Real Estate Purchase Agreement, as of the **Effective Date**.

**Seller**: Louis A. Telerico, Trustee of the Louis A. Telerico 2010 Amended and Restated Revocable Trust Indenture dated February 1, 2010

_____
Louis A. Telerico, Trustee

_____
Witness:

_____
Witness:

**Buyer**: Trevor M. Cost, Trustee of the Trevor M. Cost Revocable Trust dated September 2, 2009

_____
Trevor Cost, Trustee

_____
Witness:

_____
Witness:

Approved:

_____
Alan M. Koschik, U.S. Bankruptcy Judge

6